**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

BERNARD D. WILSON,

     Plaintiff,

vs.

INGRAM, et al.,

     Defendants.

Case No. 5:23-cv-00253-TKW-MJF

## <u>SECOND AMENDED COMPLAINT FOR DAMAGES</u>

PLAINTIFF sues DEFENDANTS, and alleges:

### <u>Jurisdiction and Venue</u>

1. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1343.

2. Plaintiff's federal claims are predicated upon 42 U.S.C. §§ 1983 and 1988.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

4. All conditions precedent to this action have been performed or waived.

### <u>Parties</u>

5. At all times material hereto, BERNARD WILSON ("Plaintiff") was an Inmate in the Florida Department of Corrections ("FDC").

6. At all times material hereto, BENNY INGRAM was an FDC employee at Jackson Correctional Institution ("Jackson C.I.") and is sued individually.

7. At all times material hereto, JONATHAN GRANGER was an FDC employee at Jackson C.I. and is sued individually.

1

8.   At all times material hereto, DANIELLE JONES was an FDC employee at Jackson C.I. and is sued individually.

9.   At all times material hereto, STEP'HAN STOUDEMIRE was an FDC employee at Jackson C.I. and is sued individually.

10.   At all times material hereto, JOSHUA CAUSEY was an FDC employee at Jackson C.I. and is sued individually.

11.   All the above Defendants acted under color of law.

## Common Allegations of Fact

12.   On November 8, 2022, Plaintiff Bernard Wilson was a prisoner at Jackson Correctional Institution (Jackson C.I.) in Malone, Florida.

13.   Four days earlier, November 4, 2022, Plaintiff's cellmate, Webens Veillard, alleged that Plaintiff sexually assaulted him, resulting in Plaintiff and Veillard being separated.

14.   A report regarding the alleged November 4, 2022 incident was filed under the Prison Rape Elimination Act ("PREA").

15.   On November 8, 2022, Defendants Benny Ingram (then a sergeant), and Jonathan Granger and Joshua Causey (then corrections officers), acting under color of state law, failed to protect Plaintiff from a known risk of serious harm at the hands of inmate Veillard.

16.   Plaintiff had previously written grievances against FDC staff, including an

assistant warden at Calhoun Correction Institution.

17.   On November 8, 2022, as Plaintiff was escorted from cell H1219 to cell H2201, Granger stated to Plaintiff, in the presence of Ingram and Causey, "You like to write grievances? This is how we deal with snitches like you."

18.   Ingram and Causey heard Granger's statement and demonstrated agreement with the statement (as shown by their subsequent actions), and continued escorting Plaintiff with Granger.

19.   As Plaintiff approached cell H2201, where Plaintiff was to be rehoused, Plaintiff observed inmate Veillard inside the cell.

20.   At the front of the cell, Plaintiff informed Ingram, Granger and Causey that he could not be placed in the cell because of the PREA allegation, that the two inmates were to be kept separate, and that he knew Veillard would attack him.

21.   Plaintiff was clearly fearful and pleaded with Ingram, Granger and Causey not to place him in the cell with Veillard.

22.   Ingram, Granger and Causey disregarded Plaintiff's pleas.

23.   Ingram stated "Nah, you'll be all right! Snitches get stitches!"

24.   Once the cell door was open Veillard told Ingram, Causey and Granger, "That's the inmate who tried to rape me I told you about. If you put him in here I'm going to kill him."

25.   Ingram stated, "This I've got to see!"

3

26.  Ingram forcefully shoved Plaintiff into the cell.

27.  Granger stated, "Wilson, get your big scary ass in there and fuck or fight!"

28.  Causey stated, "Well, now it's your turn to be molested, Wilson!"

29.  Ingram stated, "Stop being a coward and let's see who fucks who!"

30.  Prison regulations require officers to place hand restraints on the occupant of a cell before placing a second occupant into the cell.

31.  Ingram, Granger and Causey failed to place Veillard in hand restraints before placing Plaintiff in the cell with Veillard.

32.   Ingram, Granger and Causey also failed to instruct or remind other corrections staff to apply restraints to Veillard.

33.  Because Plaintiff was already wearing hand restraints and Veillard was not, Veillard was able to attack, and did attack Plaintiff, as promised, the minute Plaintiff was placed in the cell.

34.  Ingram held Plaintiff's arms as he removed Plaintiff's hand restraints through the handcuff port, effectively preventing Plaintiff from defending himself.

35.  Veillard attacked Plaintiff savagely even as Plaintiff's hand restraints were still being removed.

36.  Plaintiff attempted to defend himself after the first handcuff was removed.

37.  Once both handcuffs were removed, Plaintiff continued to attempt to defend himself but was struck by Veillard in his head, causing Plaintiff to fall backward

against the edge of the steel bottom bunk and temporarily lose consciousness.

38.   Veillard used his teeth to tear a chunk of flesh from Plaintiff's abdomen.

39.   During the fight, Ingram and Granger repeatedly came and stood at the cell front laughing, encouraging Veillard in his attack, and taunting Plaintiff as he was covered with blood from his injuries.

40.   During the fight, Plaintiff repeatedly and loudly screamed for help.

41.   Veillard attacked Plaintiff openly in front of the three corrections officers without compunction, suggesting he knew he would not suffer repercussions.

42.   On information and belief, as will likely be demonstrated through vigorous discovery, the officers did not report the attack and Veillard was not charged.

43.   Veillard's attack continued for approximately 30 minutes before Lieutenant Oliver ordered that Plaintiff be removed from the cell.

44.   On November 8, 2022, Defendant Jones was assigned to Dorm H.

45.    As Plaintiff was being placed in the cell with Veillard by Ingram, Granger, and Causey, Jones was in the Officer's Station.

46.   From the Officer's Station, Jones had the ability to control the opening of the cell doors and had an intercom through which she could speak and hear and could have interceded in the other defendants' acts had she chosen to do so.

47.   Jones heard and deliberately ignored Plaintiff's loud screams for help.

48.   Jones failed to take any action to prevent or stop or mitigate or correct, or

even report the actions of the other Defendants although present and able to do so.

49.   After Plaintiff was removed from the cell where Veillard attacked him, Plaintiff was placed in another cell, without medical treatment.

50.   After approximately 30 minutes, Defendant Causey escorted Plaintiff to the medical room.

51.   Defendant Ingram were also present in the medical room.

52.   As Nurse Jane Doe prepared to document Plaintiff's injuries, Ingram threatened Plaintiff not to report this incident "or else!" Ingram stated to the nurse, "He's good. We're just making it look good for the camera."

53.   Ingram threatened Plaintiff that documenting his injuries would not be a good idea and that he would write Plaintiff more disciplinary reports if he did so.

54.   By interrupting the nurse's examination, Ingram prevented and interfered with Plaintiff's injuries being documented and treated.

55.   Nurse Jane Doe complied with Ingram's interference with medical examination and care and, upon information and belief, did not document the encounter in the medical records.

56.   On November 9, 2022, Plaintiff was released from confinement and immediately initiated a "sick call" request due to the severe pain he suffered from the November 8, 2022, attack.

57.   Plaintiff also began to file a number of grievances on the officers.

58.   On November 13, 2022, between 5:00 and 6:00 p.m., Defendant Jones visited G Dorm, although she was not assigned there, to search Plaintiff's cell (G4108) for contraband that could be used to bring disciplinary charges.

59.   Jones had no legitimate business in G Dorm but appeared to try to find a basis for disciplinary charges as retaliation for Plaintiff's grievances and reports.

60.   Jones, after failing to find any contraband in the cell, nevertheless removed Plaintiff from the cell and proceeded to take him to confinement.

61.   While Jones was escorting Plaintiff to confinement, Plaintiff asked her why he was being placed in confinement.

62.   Jones stated, "Didn't they tell you not to report that little incident?! And you filed a grievance anyway. So your snitch ass is going to suffer!" She added, "I will make your stay here at A.M.U. a living hell, you fucking rat!"

63.   Although Plaintiff ultimately received no disciplinary report, he spent a week in solitary confinement as a result of Jones's retaliation.

64.   Months later, in March 2023, Defendant Stoudemire visited Plaintiff in his cell where Plaintiff was working on his initial draft of the complaint in this case.

65.   Stoudemire seized the complaint from Plaintiff, looked at it, ripped it up in front of him and flushed it down the toilet, warning him not to try to sue the other Defendants. And placed hm on property restriction without reason.

## Causes of Action

I. **First Amendment Violation under 42 U.S.C. § 1983 (Ingram, Granger, Causey, Jones and Stoudemire)**

The Common Allegations of Fact above are stated herein by reference.

66.   Plaintiff is entitled to relief against Benny Ingram (now lieutenant), Jonathan Granger (now lieutenant), C.O. Joshua Causey, Danielle Jones (now sergeant) and Step'Han Stoudemire (now sergeant), for acts designed to chill the exercise of speech and redress as retaliation for having previously exercised protected speech and redress such that a person of ordinary firmness would normally refrain from fully expressing such speech.

67.   Ingram, Granger and Causey had placed Plaintiff in the cell with Veillard, who expressed intent to kill Plaintiff, because those Defendants sought to punish Plaintiff for writing earlier grievances, protected speech and redress.

68.   Ingram warned Plaintiff not to report the incident that caused him physical harm and demonstrated that he could interfere with his medical treatment.

69.   Jones and Stoudemire acted to punish Plaintiff for protected speech and seeking redress and to warn him against proceeding with grievances or lawsuits.

70.   Jones searched Plaintiff's cell and, finding no contraband, still placed him in confinement telling him she was acting in reprisal for his grievances and reports.

71.   Jones told Wilson, "Didn't they tell you not to report that little incident?! And you filed a grievance anyway. So your snitch ass is going to suffer!" She

added, "I will make your stay here at A.M.U. a living hell, you fucking rat!"

72.   Stoudemire was aware of the nature of the actions of the other Defendants, read substantive parts of Plaintiff's initial draft complaint, and confiscated the complaint, ripping it up and flushing it down the toilet.

73.   Stoudemire expressed to Plaintiff that he would not be allowed to file a lawsuit against the other Defendants on pain of further retaliatory acts.

74.   As a direct and proximate result of the Defendants' procurement of physical abuse, interference with medical care, retaliation, and threats of retaliation, Plaintiff suffered emotional and physical injuries and pain, as described above.

75.   As Plaintiff has been required to engage the services of counsel, he is entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

## II.   Eighth Amendment: Cruel and Unusual Punishment (Procuring Violence) under 42 U.S.C. § 1983 (Ingram)

The Common Allegations of Fact above are stated herein by reference.

76.   Plaintiff is entitled to relief against Defendant Ingram, acting under color of law, as a supervisor, for deliberate indifference to a known risk of harm and actively procuring that harm by his affirmative acts.

77.   As a supervisor on the scene who procured, observed and was aware of the risk of harm, Ingram is liable for Plaintiff's severe injuries.

78.   Ingram, a sergeant and supervisor, used his authority to place Plaintiff in

harm's way, assist the perpetrator of violence to accomplish the harm, and modeled abusive behavior to subordinates who participated in the acts.

79.   Ingram invited subordinates Causey and Granger to participate in their abuse of Plaintiff and endorsed their participation in these acts.

80.   Ingram forced Plaintiff to enter the confinement cell with Veillard, despite Veillard's having expressed homicidal thoughts openly in his presence and despite his knowledge of Veillard's conflict with Plaintiff and the risk of harm.

81.   Ingram assisted Veillard in attacking Plaintiff by leaving Veillard unrestrained while Plaintiff was restrained and failed to intervene though able.

82.   Ingram held Plaintiff's wrists through the cuff slot as Veillard attacked him.

83.   Ingram used his supervisory powers to fabricate reports and/or withhold truthful reports of his and his subordinate's wrongful acts from higher authority.

84.   Ingram had full authority to intervene to stop the unlawful conduct of his subordinates and that of Inmate Veillard but deliberately chose not to do so.

85.   Ingram knew his conduct would cause and encourage his subordinates to either act unlawfully or continue to act unlawfully.

86.   Ingram's subordinates, Causey and Granger, under his supervision, assisted in placing Plaintiff in the cell with Veillard.

87.   Ingram condoned Granger's statement to Plaintiff, "You like to write grievances? This is how we deal with snitches like you."

10

88.   Ingram never reprimanded his subordinate, Granger, for the statement.

89.   Ingram endorsed Granger's statement as shown by Ingram's placing Plaintiff in the cell with Veillard—despite the keep away restriction—and Ingram's own statements including, "Stop being a coward and let's see who fucks who!"

90.   Ingram repeatedly and clearly signaled to his subordinates that retaliation against Plaintiff for writing grievances was acceptable and desired.

91.   Ingram's actions were a direct and proximate cause of significant permanent severe physical injury, mental distress, humiliation, and immense pain and suffering, that Plaintiff will continue to suffer from in the future.

92.   As it was necessary for Plaintiff to retain the undersigned attorney to represent him, Plaintiff is entitled to an award of attorney's fees and costs.

WHEREFORE, Plaintiff seeks relief as noted below.

## III.   Eighth Amendment: Cruel and Unusual Punishment: Failure to Protect under 42 U.S.C. § 1983 (Ingram, Granger, Causey and Jones)

The Common Allegations of Fact above are stated herein by reference.

93.   Plaintiff is entitled to relief against Defendants Ingram, Granger, Causey and Jones for failure to protect Plaintiff in violation of the Eighth Amendment.

94.   Ingram, Granger and Causey forced Plaintiff to enter a cell with another inmate who expressed an intention to kill Plaintiff if he were placed in the cell.

95.   Veillard stated, "That's the inmate who tried to rape me I told you about. If you put him in here, I'm going to kill him."

96.  Ingram stated, "This, I've got to see!" and responded to Plaintiff's pleas by stating, "Stop being a coward and let's see who fucks who!"

97.  Causey responded to Plaintiff's pleas not to be placed with Veillard by saying, "Well, now it's your turn to be molested, Wilson!"

98.  Ingram forcefully shoved Plaintiff into the cell while Granger stated, "Wilson, get your big scary ass in there and fuck or fight!"

99.  Once Plaintiff was in the cell, Veillard, whose hands remained unrestrained, began to attack Plaintiff as Ingram was removing Plaintiff's hand restraints.

100.  Plaintiff attempted to defend himself but was struck by Veillard in his head and knocked backwards, striking the steel bottom bunk, losing consciousness.

101.  Veillard also bit Plaintiff in the abdomen tearing out a chunk of flesh.

102.  Defendant Jones staffed the Officer's Station where she had the power to control the cell doors to protect Plaintiff or to expose him to harm.

103.  The Officer's Station was designed to give officers a clear view of the cell fronts of each wing and to control door openings, and also to hear and speak to persons outside the Officer's Station through an intercom system.

104.  As Plaintiff bled profusely, Defendants Ingram and Granger stood at the cell front laughing and taunting Plaintiff.

105.  This attack continued for approximately 30 minutes before Lieutenant Oliver ordered that Plaintiff be removed from the cell with Veillard.

12

106. Defendants Ingram, Granger and Causey exposed Plaintiff to danger from Veillard by forcing him into a cell with an inmate who promised to kill him, and failed to act to protect him from harm.

107. Neither Ingram, Granger, Causey or Jones sought to intervene to try to prevent the abusive acts of the others, though they were present and could have.

108. Ingram, Granger and Causey showed deliberate indifference to Plaintiff's safety, stating that it was his turn to be "molested" and to "fight or fuck" Veillard.

109. Ingram, Granger and Causey were deliberately indifferent to the substantial risks to the Plaintiff by failing to heed warnings, come to the aid of the Plaintiff, or remove him to another cell to preserve his life and safety.

110. Instead, they assisted with and encouraged the violence.

111. Jones ignored and was deliberately indifferent to Plaintiff's ongoing and repeated screams for help and made no effort to intervene and protect Plaintiff.

112. As a proximate result of Defendants' denial of protection, Plaintiff has suffered significant physical injury, mental distress, humiliation, and immense pain and suffering, and will continue to suffer from such injuries in the future.

113. As it was necessary for Plaintiff to retain the undersigned attorney to represent him, Plaintiff is entitled to an award of attorney's fees and costs.

WHEREFORE, Plaintiff seeks relief as noted below.

**IV.  Eighth Amendment: Cruel and Unusual Punishment: Interference with Medical Treatment under 42 U.S.C. § 1983 (Ingram)**

13

The Common Allegations of Fact above are stated herein by reference.

114. Defendant Ingram was deliberately indifferent to Plaintiff's serious medical condition by interfering with timely examination and treatment of Plaintiff despite his knowledge of the need for such medical care, including a human bite.

115. As Nurse Jane Doe attempted to document Plaintiff's injuries, Ingram threatened Plaintiff not to report this incident "or else!" and stated, "He's good. We're just making it look good for the camera." Ingram threatened Plaintiff that documenting his injuries would not be a good idea and that he would write him additional disciplinary reports for doing so.

116. Because of the failure of the nurse to provide timely examination and treatment, Plaintiff unnecessarily suffered pain and disability in confinement.

117. As a direct and proximate result of the Ingram's acts and omissions, Plaintiff suffered more severe pain and disability than if he had been timely treated.

118. Ingram interfered with Plaintiff's medical treatment to punish him.

119. As it was necessary for Plaintiff to retain the undersigned attorney to represent him, Plaintiff is entitled to an award of attorney's fees and costs.

WHEREFORE, Plaintiff seeks relief as noted below.

**V.   Conspiracy to Violate the First and Eighth Amendment under 42 U.S.C. § 1983 (Granger, Ingram, Causey, Jones and Stoudemire)**

The Common Allegations of Fact above are stated herein by reference.

120. Plaintiff is entitled to relief against Defendants Granger, Ingram, Causey,

14

Jones and Stoudemire, for conspiring to violate the rights of the Plaintiff by acts designed to achieve a personal goal of animus-based retaliation on Plaintiff and carry out a criminal purpose.

121.  Defendants were joined in their deliberate indifference and procurement of Plaintiff's harm by other persons who were not employees of FDC, including a nurse and the inmate attacker, who acted in concert and by agreement, tacit or explicit, to cause or permit harm to Plaintiff.

122.  The Defendants all agreed or performed acts that demonstrated agreement to commit or further one or more of the unlawful acts described above, including unlawful chilling of speech, unlawful violence, the direction and coordination of unlawful violence, and failure to protect or intervene.

123.  As a direct and proximate result of these unlawful acts, Plaintiff has suffered emotional and physical injuries, distress and pain, as described more fully above.

124.  As Plaintiff has been required to engage the services of counsel, he is entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

## Prayer for Relief

Plaintiff respectfully requests of the Court:

A.  Compensatory damages against individual defendants;

B.  Punitive damages against individual defendants;

C.  Reasonable attorney's fees and costs as provided by law;

D.  Trial by jury for those counts so triable; and

E.  Such other relief as the Court deems just and proper.

Respectfully submitted,   *s/ James V. Cook*
                          JAMES V. COOK, ESQ.
                          Florida Bar Number 0966843
                          Law Office of James Cook
                          314 West Jefferson Street
                          Tallahassee, FL 32301
                          Phone: (850) 222-8080
                          Fax: (850) 561-0836
                          Email: cookjv@gmail.com

                          */s/ Joshua Tarjan*
                          Joshua Tarjan (FBN 107092)
                          THE TARJAN LAW FIRM P.A.
                          12372 SW 82 Avenue
                          Pinecrest, FL 33156
                          (305) 423-8747
                          (323) 243-3186 (cell)
                          (786) 842-4430 (fax)
                          josh@tarjanlawfirm.com

                          Counsel for Plaintiff

I CERTIFY the foregoing was filed electronically on May 20, 2024, serving counsel of record registered to be notified by the CM/ECF electronic filing system.

                          */s/James V. Cook*

16