## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**BERNARD D. WILSON**
**DC# T24935,**

      **Plaintiff,**

**v.**                       **Case No.: 5:23-cv-253-TKW/MJF**

**INGRAM, ET AL.,**

      **Defendants.**
_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Jones**, **Causey**, **Granger**, and **Ingram** ("Defendants" or individually by name), through counsel, hereby move for Summary Judgment in their favor pursuant to Rule 56, Fed. R. Civ. P., and Rule 56.1, N.D. Fla. Loc. R., and alleges the following in support thereof:

## STATEMENT OF MATERIAL FACTS

Plaintiff is prisoner within in the custody of the Florida Department of Corrections ("FDOC"). *See* (Exhibit A). *See also* (Doc. 31 at ⁋ 5).[1] Plaintiff's allegations of injury are related to incidents which occurred on November 8, 2022, and November 13, 2022. *See generally* (Doc. 31).

_____

[1] Each document filed in this case as part of the Electronic Case File will be referenced as "Doc." followed by the document number.

On October 11, 2022, Plaintiff was moved into cell H1219L while at Jackson Correctional Institution ("Jackson"). (Exhibit B). On October 31, 2022, a second inmate, Webens Veillard, DC# C90725 ("Veillard"), was moved into the same cell as Plaintiff. (Exhibit C). Both Plaintiff and Veillard occupied the same cell until around 7:00 PM on Friday, November 4, 2022, when Veillard made a sexual battery allegation against Plaintiff to Captain James Obert. (Exhibits B-D). Based on the sexual battery allegation, Plaintiff and Veillard were separated from one another and placed in different cells. (Exhibits B, C). During the separation, on November 4, 2022, at around 9:00 PM, Plaintiff was medically assessed, and no injuries were noted to Plaintiff. (Exhibit E at 3). Plaintiff was escorted to medical by Lieutenant K. King and Sergeant R. Hardbower. (Exhibit F at 5).

On Monday, November 7, 2022, an Inspector General ("IG") investigation was opened based on sexual battery allegations. (Exhibits D, H, I). As part of the investigation, an Incident Report was created with log # 104-22-11-39, and the Colonel and Warden informed certain individuals, who are not Defendants, not to place Plaintiff and Veillard together. (Exhibit D).

On November 8, 2022, Plaintiff was taken from his cell and escorted to Veillard's cell. (Doc. 31 at ₱ 17). *See also* (Exhibit J at 32). While being escorted, Plaintiff was handcuffed, and eventually arrived at Veillard's cell. *Id.* at 35. Upon arriving at Veillard's cell, Plaintiff was placed inside the cell. *Id.* at 33-34. When

2

Plaintiff was placed inside of Veillard's cell, Veillard did not say anything to the officers present at the time. *Id*. at 33. Veillard does not remember Plaintiff saying thing prior to being placed inside of the cell. *Id*. at 33. After placement in the cell, Plaintiff attacked Veillard once his handcuffs were removed.[2] *Id*. at 37. During this time, Plaintiff and Veillard fought for a short amount of time, with the Lieutenant and the other officer alleged to be present, possibly walking away for a short time, only to remove Plaintiff and Veillard from the cell shortly thereafter. *Id*. at 38-39.

At approximately 2:20 PM, Plaintiff was escorted to medical for an assessment. (Exhibit E at 6-18). While in medical, Plaintiff indicated to Nurse Kilee Everett ("Everett") that Veillard claimed injuries against him and stated that Veillard "didn't want to be in a cell with another inmate and started 'beating himself up and was going to say he got beat-up.'" *Id*. at 7, 11, 16. Plaintiff was also medically assessed, and no injuries were noted to Plaintiff. *Id*. at 14. Plaintiff was then escorted from medical and placed in a cell without incident.

At approximately 2:30 PM, Veillard was escorted to medical for an assessment. (Exhibit G at 24-33). While in medical, Everett medically assessed

---

[2] The facts related to a fight occurring are admitted solely for the purposes of this Motion and should not be considered an admission by any defendant that a fight occurred. Instead, evidence exists that no fight occurred, and Veillard's injuries (only he was documented as suffering any injury at around the time of the fight) were self-inflicted. *See* (Exhibit E at 7, 11, 16). *See also* (Exhibit G at 26, 28, 31) Defendants certainly do not remember any fight occurring on the date described by Plaintiff, (Exhibits K at 51; L at 19; M at 52; N at 32-33), and there is no evidence that a fight occurred other than Plaintiff and Veillard saying one occurred.

Veillard and determined that he had a "lower lip abrasion with minimal bleeding" and that his injuries appeared "to be self inflicted – as bitten lower lip by self and abrasion to chin." *Id*. at 26. *See also Id*. at 28, 31. Veillard was also escorted from medical and placed in a different cell from Plaintiff without incident.

On November 13, 2022, Jones conducted a search of Plaintiff's cell. (Exhibits O, P). While conducting the search, Jones discovered tobacco wrapped in plastic under Plaintiff's sheets. (Exhibits O, P). Based on the discovery of the possible tobacco, the item was seized, and Jones approached her Lieutenant, Eric Gibson ("Gibson"). (Exhibits O, P). Gibson then created an Incident Report, and Plaintiff was placed in Administrative Confinement ("AC") pending testing of the item for narcotics and potential discipline. (Exhibit O).

On November 14, 2022, a MINS Report was also created, and the IG was alerted of the November 13, 2022, incident. (Exhibit P). The IG determined that action against Plaintiff should be taken by the intuition, as necessary. *Id*. Ultimately, Plaintiff remained on AC from November 13, 2022, through November 21, 2022, at which point he was released back to open population. (Exhibit B).

Meanwhile, the IG investigation continued but was ultimately determined to be unfounded on February 9, 2023. *See* (Exhibit I at 42).

## **MEMORANDUM OF LAW**

### **Standard for Summary Judgment**

Summary Judgment is proper if the pleadings and sworn statements show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for Summary Judgment bears the initial burden of demonstrating an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 322-23. Upon meeting this burden, the burden shifts to the nonmoving party to present evidentiary material demonstrating that a genuine issue of material fact exists. *Id.*

Applicable substantive law identifies those facts that are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual issues must have a real basis in the record to be considered genuine and the nonmoving party must show more than a "metaphysical doubt" regarding the material facts. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The evidence and reasonable inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party. *Watkins v. Ford Motor Co.*, 190 F.3d 1213, 1216 (11th Cir. 1999).

Although all reasonable inferences are made in favor of the nonmoving party, a court need not permit a case to go to a jury when the inferences drawn from the evidence and upon which the nonmoving party relies are 'implausible.' *Cuesta v. School Bd. of Miami-Dade County*, 285 F.3d 962, 970 (11th Cir. 2002)

(citations omitted). A mere "scintilla" of evidence in support of the nonmoving party's position is not sufficient; there must be evidence upon which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 252. *See also Matsushita*, 475 U.S. at 587 (there is no genuine issue for trial if record taken as a whole would not lead a rational trier of fact to find in favor of non-moving party). In other words, Summary Judgment is warranted against a nonmoving party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

To create an issue of fact for trial sufficient to defeat a well-supported Summary Judgment motion, the non-movant's evidentiary material must consist of more than conclusory, uncorroborated allegations from an affidavit. *West v. Higgins*, 346 F. App'x 423, 425 (11th Cir. 2009) (per curiam) (unreported op.) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)). Further, if "two parties tell different stories [where one] is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If a fact cannot be presented in a form that would be admissible in evidence, it cannot be used for purposes of Summary

Judgment. *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). *See also* Rule 56(c), Fed. R. Civ. P.

In *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996), the Eleventh Circuit clarified its earlier rulings on this point by indicating that their cases applying *Celotex* read *Celotex* "as simply allowing *otherwise admissible evidence* to be submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form." The Court continues to apply this principle. *See McCaskill v. Ray*, 279 Fed. App'x. 913, 914 (11th Cir. 2008). However, the court was clear that "potential impeachment evidence [although admissible] . . . may not be used to create a genuine issue of material fact for trial" that would defeat a Motion for Summary Judgment. *McMillian*, 88 F.3d at 1584.

## I.    Plaintiff fails to state a cause of action for a 1st Amendment violation against Defendants.

To prevail on a retaliation claim, Plaintiff must demonstrate "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosely*, 532 F. 3d 1270, 1276 (11th Cir. 2008). However, it is important to recognize that:

> Claims of retaliation are ... easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act.

*Alverson v. Mills*, 2021 WL 1215804, at *8 (M.D. Ala. Jan. 20, 2021), report and recommendation adopted in part, 2021 WL 1216851 (M.D. Ala. Mar. 30, 2021) (internal citations omitted).

In this case, Defendants do not dispute that Plaintiff filed grievances while incarcerated. However, Plaintiff's claims fails on the third prongs of the required elements to demonstrate his claims. The reason why Plaintiff fails on the third element is that the action taken by Defendants must necessarily be demonstrated to be retaliatory. *Hartman v. Moore*, 547 U.S. 250, 260 (2006) ("If there is a finding that retaliation was not the but-for cause of the [action], the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind."). If Defendants' actions were for a reasonable justified purpose, such a penological purpose, then the pretextual motivations described by Plaintiff do not matter. *Id*. at 260 ("It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway.").

Ingram testified that the decision to place Plaintiff and Veillard together was not made by them, but instead that they would have been ordered to do so by an individual who determines placements. (Exhibit K at 18-20, 29-31). Ingram does not remember any incident such as the one Plaintiff alleges but are clear that the decision to place Plaintiff in the cell with Veillard, if it occurred, was not because of retaliation, but rather, because of an order to do so. *Id.* at 19-20. Furthering the problem for Plaintiff is the fact that not a single Defendant was aware of the November 4, 2022, incident between Plaintiff and Veillard. (Exhibits K at 51; L at 19; M at 52; N at 32-33). As a result, the purpose of the placement of Veillard and Plaintiff together was a function of their responsibilities, and was taken for a legitimate penological purpose as far as Defendants would have understood it at the time.

Additionally, there is not a single piece of evidence that supports a causal relationship between Plaintiff's placement in the cell with Veillard and his grievances. Within his Complaint, Plaintiff *presumes* a connection, *see e.g.* (Doc. 31 at ¶ 66), but no evidence exists linking the placement and his grievances. Even the alleged statements by Defendants, which have been refuted as being made, *see e,g,* (Exhibits M at 82; N at 35-40), do not demonstrate a clear causal relationship between Plaintiff's grievances and his placement in the cell.

Finally, Plaintiff's allegation against Jones is different from the other Defendants since he complains about placement in AC without receiving a Disciplinary Report. (Doc. 31 at ¶¶ 63, 66, 69). Plaintiff's allegations of violation of his rights is entirely unfounded because Plaintiff was placed in AC based on the decisions of Jones' superior officers due to suspected tobacco being found in Plaintiff's sheets. (Exhibits O, P). The control of contraband, especially suspected drugs, is clearly a penological interest. Plaintiff's gripes about the time he spent in AC are without merit.

## II.    Plaintiff fails to state a claim based on a theory that Defendant Ingram "procured violence" in violation of the 8th Amendment.

The 8th Amendment prohibits officers from intentionally injuring inmates, as such behavior would constitute cruel and unusual punishment. However, Plaintiff fails to demonstrate a cause of action because there is no evidence that any action taken by Ingram in allegedly placing Plaintiff in the cell was motivated by knowledge of the November 4, 2022, incident, as Plaintiff alleges. *See* (Doc. 31 at ¶¶ 76-78).

During his deposition, Ingram specifically refuted the notion that he knew about the November 4, 2022, incident. (Exhibit K at 19). Plaintiff offers no other justification for the alleged "procurement" than the November 4, 2022, incident. *See* (Doc. 31 at ¶¶ 76-78). Plaintiff offers no evidence to refute the fact that Ingram

did not know about the incident, and no such evidence exists. Plaintiff's entire foundation is based on conjecture and speculation and has no basis in reality.

## III. Plaintiff fails to state a cause of action for Failure to Protect against Jones and Causey.

The 8th Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), but the requirement does not make officials "guarantor[s] of [prisoners'] safety." *Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005). As a result, prison officials are not constitutionally liable for every inmate-on-inmate attack. *Farmer*, 511 U.S. at 832. To state a cause of action for failure to protect, Plaintiff must demonstrate three elements: (1) Plaintiff must show that he was "incarcerated under conditions posing a substantial risk of serious harm;" (2) that Defendant "'[had] a sufficiently cuplable statement of mind,' amounting to 'deliberate indifference;'" and (3) that the constitutional violation caused Plaintiff's injuries.[3] *Cox v. Nobles*, 15 F. 4th 1350, 1357-58 (11th Cir. 2021).

"Deliberate indifferent exists when a prison official 'knows of and disregards an excessive risk to inmate health or safety.'" *Cox*, 15 F. 4th at 1358 (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Recently, the 11th Circuit

---

[3] For purposes of this Motion only, Defendant does not contest that Plaintiff was injured and that if a constitutional violation exists, the injury was contributed to by the violation.

made clear, *en banc*, that the standard for deliberate indifference brought under the 8th Amendment is as follows:

> For reasons we'll explain, we now hold, in accordance with the Supreme Court's decision in *Farmer v. Brennan*, that in addition to an "objectively serious" deprivation, a deliberate-indifference plaintiff must show that the defendant acted with "subjective recklessness as used in criminal law," and that in order to do so, the plaintiff must demonstrate that the defendant actually knew that his conduct – his own actions or omissions – put the plaintiff at substantial risk of serious harm. We add the caveat, likewise prescribed by *Farmer*, that even if defendant "actually knew of a substantial risk to inmate health or safety," he cannot be found liable under the Cruel and Unusual Punishments Clause if he "responded reasonably to th[at] risk."

*Wade v. McDade*, 106 F.4th 1251, 1253 (11th Cir. 2024) (internal citations removed). *See also Farmer v. Brennan*, 511 U.S. 825, 839 (1994). *See also Terry v. Baily*, 376 Fed. App'x 894, 895-96 (11th Cir. 2010) (analyzing a failure to protect claim in the context of an inmate-on-inmate attack between cellmates). The 11th Circuit has "been at pains to emphasize that 'the deliberate indifferent standard . . . is far more onerous than normal tort-based standards of conduct sounding in negligence,' and is in fact akin to 'subjective recklessness as used in the criminal law.'" *Hoffer v. Secretary, Florida Department of Corrections*, 973 F. 3d 1263, 1271 (11th Cir. 2020).

A generalized risk of harm does not satisfy the subjective element of a deliberate indifferent claim, and instead the substantial risk must be known, and an

inference must be drawn by the individual which demonstrates an understanding of the substantial risk. *Cox*, 15 F.4th at 1358-60. A prison official cannot be held liable under the Eighth Amendment for not appreciating that a prisoner faced a substantial risk of serious harm, even if "the risk was obvious and a reasonable prison official would have noticed." *Farmer*, 511 U.S. at 842 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment.").

To establish an 8th Amendment violation, a prisoner must point to evidence permitting the reasonable inference that the defendant was deliberately indifferent to conditions that were "sufficiently serious." *See Chandler v. Crosby*, 379 F.3d 1278, 1288 (11th Cir. 2004). Conditions of confinement are "sufficiently serious" only if they are so extreme that they expose the prisoner to "an unreasonable risk of serious damage to his future health or safety." *Id.* at 1289 (internal quotation marks omitted). "Showing substantial risk of serious harm requires the prisoner to provide evidence that there was a 'strong likelihood' of his injury occurring." *Visage v. Woodall*, 798 F. App'x 406, 408 (11th Cir. 2020) (citing *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015)). A court's consideration of whether there was a strong likelihood, as opposed to a "mere possibility," of an injury occurring cannot be based on "hindsight bias." *Brooks*, 800 F.3d at 1301.

Moreover, isolated incidents do not satisfy the "substantial risk" standard articulated in *Farmer*. *See e.g.*, *Purcell*, 400 F.3d at 1320 ("[O]ccasional, isolatd attacks by one prisoner on another may not be constitute cruel and unusual punishment, [but] confinement in a prison where violence and terror reign is actionable."). *See also Lakin v. Barnhart*, 758 F.3d 66, 70-72 (1st Cir. 2014) (Souter, J., sitting by designation) (explaining that the risk must be "substantial," not isolated or infrequent, and affirming summary judgment in defendants' favor where plaintiff's evidence did not reach the "substantial" threshold required by *Farmer* as "not every risk carries an inherent threat at a substantial level.").

As a result, a prisoner cannot survive summary judgment based solely on evidence of past isolated incidents or his own injury. *Visage*, 798 F. App'x at 408. Rather, the prisoner must demonstrate that the complained-of condition – most commonly inmate-on-inmate violence – resulted in so many incidents or injuries that such incidents or injuries were "the norm or something close to it." *Marbury v. Warden*, 936 F.3d 1227, 1234 (11th Cir. 2019) (quoting *Purcell*, 400 F.3d at 1322)).

As it relates to an officer's failure to intervene, the law is clear that "[p]rison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence." *Terry*, 376 Fed. App'x at 896 (citing *Ensly v. Soper*, 142 F. 3d 1402, 1407 (11th Cir. 1998)).

14

"[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim . . . can be held personally liable for his nonfeasance." *Skritch v. Thornton*, 280 F3d 1295, 1301 (11th Cir. 2002).

Plaintiff has not stated a cause of action against Jones or Causey for failure to protect. Plaintiff's Complaint indicates that Jones was "in the Officer's Station," (Doc. 31 at ⁋ 45), and Causey helped with the placement in the cell. However, during his deposition, Plaintiff indicated that Defendants Ingram and Granger were the individuals who escorted him to the cell with Veillard. (Exhibit Q at 35-36). Plaintiff is clear that Causey was not involved in the escort to the cell. *Id*. During Veillard's deposition, Veillard indicated that Ingram and a Lieutenant were the individuals who escorted Plaintiff to his cell. (Exhibit J at 50). Plaintiff fails to state a cause of action against both individuals, for different reasons.

As it relates to Jones, despite Plaintiff indicating that she was in the Officer Station, she was not working at the time of the alleged incident. On November 8, 2022, Jones worked on third shift, which began at 3:30 PM. (Exhibits M at 39; R at 3; S at 7). Plaintiff has not described the time of the incident, but as he was escorted to medical around 2:20 PM, *see* (Exhibit E at 6-18), Jones was not on shift at the time. (Exhibits M at 39; R at 3; S at 7). Records demonstrate that Jones began her shift at 3:30 PM when she began completing the H-Unit Housing Log. (R at 3-7). During her deposition, Jones confirmed that the "DJ" initialed on the

Housing Unit Log are her initials and the "D. Jones" signatures constitute her signatures on the documents. (Exhibit M at 33, 34). As Jones was not on shift at the time of the alleged incident, she had no ability to protect Plaintiff or intervene on his behalf, and Plaintiff has not stated a cause of action against her.

As it relates to Causey, Plaintiff fails to state a cause of action because he does not even allege that Causey was involved in Plaintiff's placement in the cell with Veillard. Plaintiff indicates that Causey escorted him to a shower cell, but later, Ingram and Granger escorted him to and placed him in the cell with Veillard. (Exhibit Q at 35-36). No evidence suggests that Causey was nearby to the incident and had the ability to intervene or protect Plaintiff prior to his placement in the cell with Veillard.

Similarly, there is no evidence that Causey was aware that there was a need to intervene, presuming that a fight did occur between Plaintiff and Veillard. No evidence places Causey nearby to Veillard's cell.

Moreover, no evidence suggests that Causey was aware of any problem with the placement of Plaintiff with Veillard, or that he was even aware that the placement would occur. Causey himself has no recollection of the incident alleged by Plaintiff. (Exhibit L at 16). As a result, Plaintiff has failed to demonstrate a cause of action against Causey.

**IV.   Plaintiff fails to demonstrate a cause of action for Interference with Medical treatment in violation of the 8th Amendment.**

Plaintiff does not state a cause of action against Ingram for interference with medical treatment. In this case, Plaintiff premises his claim on alleged inference with Everett's treatment by Ingram. *See* (Doc. 31 at ¶¶ 51-55, 114-115). However, Plaintiff's allegations are not true, and instead, Everett has confirmed that her medical records are true and accurate. Even more importantly, Plaintiff did receive *some* treatment, as he was medically assessed on the date. *See e.g.* (Exhibit E at 6-18). Even though it appears that Plaintiff disagrees with the degree of treatment received, he has chosen not to sue Everett.

**V.   Plaintiff fails to state a cause of action for conspiracy.**

Plaintiff fails to demonstrate a cause of action for a conspiracy claim under § 1983. To succeed on his claims, Plaintiff must demonstrate that "a conspiracy existed that resulted in the actual denial of some underlying constitutional right." *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010). As part of the claim, Plaintiff must demonstrate that "defendants reached an understanding to violate [his] constitutional rights." *Id.* (internal quotation marks omitted).

Plaintiff's conspiracy claim fails because of the intracorporate conspiracy doctrine. As described by the 11th Circuit in dismissing a conspiracy claim,

> For a conspiracy to be formed, there must be an agreement among multiple actors. *See id.* at 1261. But when an agency's employees act within the scope of their employment, their actions are attributed to

17

the agency itself. *Id.* Under the doctrine, an agency's employees, "when acting in the scope of their employment, cannot conspire among themselves." *See id.* (explaining that actions of the employees are attributed to the agent itself, "thereby negating the multiplicity of actors necessary for the formation of a conspiracy" (internal marks omitted)).

*Harris v. Wingo*, 2023 WL 3221640, at *5 (11th Cir. 2023) (citing *Grinder*). In this case, Plaintiff alleges that Defendants were acting within the scope of their employment. *See* (Doc. 32). *See also Grinder*, 618 F.3d at 1261 ("The scope-of-employment inquiry is whether the employee . . . was performing a function that, but for the alleged constitutional infirmity, was within the ambit of the officer's scope of authority (i.e., job-related duties) and in furtherance of the employer's business."). Because all the Defendants were acting within the scope of their employment with the Florida Department of Corrections, the intracorporate conspiracy doctrine bars Plaintiff's claim.

## VI.    Plaintiff is not entitled to Compensatory Damages.

Plaintiff fails to state a claim which would entitle him to compensatory damages because he fails to state a physical injury which is greater than *de minimus*. As such, Plaintiff's request for compensatory damages from Defendants must be dismissed pursuant to 42 U.S.C § 1997e(e).

The Prison Litigation Reform Act ("PLRA") provides that a prisoner may not bring an action "for mental or emotional injury suffered while in custody without a prior showing of physical injury or commission of a sexual act." 42

U.S.C. § 1997e(e).  Section 1997e(e) is an affirmative defense – not a jurisdictional limitation – and the district court may *sua sponte* dismiss a claim where the allegations show that this defense would bar recovery.  *Douglas v. Yates*, 535 F. 3d 1316, 1320-21 (11th Cir. 2008). Per well-established precedent in this circuit, more than a *de minimis* physical injury is needed to satisfy the requirements of § 1997e(e). *Harris v. Garner*, 190 F.3d 1279, 1286-87 (11th Cir.), vacated, 197 F. 3d 1059 (11th Cir. 1999), reinstated in relevant part, 216 F. 3d 970, 972, 985 (11th Cir. 2000) (en banc). While the phrase "greater than *de minimis*" has not been clearly defined, the court has held that the injury need not be significant. *Id*. at 1286. However, "routine discomfort is part of the penalty that criminal offenders pay for their offenses against society." *Id*.  (quotations omitted).

The Eleventh Circuit is in accord that, under 42 U.S.C. § 1997e(e), compensatory damages are unavailable absent physical injury. *Al-Amin v. Smith*, 637 F. 3d 1192 (11th Cir. 2011) (holding that "the overall tenor of *Harris* and its progeny, when taken together, unmistakably supports" the conclusion that § 1997e(e) applies to constitutional claims and precludes the recovery of compensatory damages in the absence of the requisite physical injury; *Smith v. Allen,* 502 F. 3d 1255, 1271 (11th Cir. 2007) (stating that § 1997e(e) precludes an inmate's claims for compensatory damages without a prior showing of physical injury); *Slicker v. Jackson*, 215 F. 3d 1225, 1229 (11th Cir. 2000) ("compensatory

damages under § 1983 may be awarded only based on *actual injuries* caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated"). The physical injury requirement applies to all federal claims, including constitutional claims. *Harris v. Garner*, 216 F. 3d 970, 984-85 (11th Cir. 2000).

While 42 U.S.C. § 1997e(e) does not define "physical injury," the Eleventh Circuit has held that to satisfy the statute, the physical injury must be more than minimal but need not be significant. *Daughtry v. Moore*, Slip Copy, 2009 WL 1151858, *5 (S.D. Ala. 2009), citing *Dixon v. Toole*, 225 F. App'x 797, 799 (11th Cir. 2007). *See also Harris v. Garner*, 190 F. 3d 1279, 1286 (11th Cir. 1999), vacated, 197 F. 3d 1059, reinstated in relevant part, 216 F. 3d 970, 972 (11th Cir. 2000) (en banc); *Mitchell v. Horn*, 318 F. 3d 523, 536 (3rd Cir. 2003); *Oliver v. Keller*, 289 F.3d 623, 626-628 (9th Cir. 2002); *Siglar v. Hightower*, 112 F. 3d 191, 193-94 (5th Cir. 1997), abrogated on other grounds by *Wilkins v. Gaddy*, 559 U.S. 34 (2010).  In explaining the type of injury which is not barred by 28 U.S.C. § 1997e(e), some courts have proffered the following common-sense approach; "would the injury **require** or **not require** a free world person to <u>visit</u> an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury?" *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997) (emphasis added).  Stated another way:

> A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which last even up to two or three weeks. People in regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature or persists after home remedy care. Thus, the seriousness of the injury needed . . . require more than the types and kinds of bruises and abrasions about which the Plaintiff complains.

*Talley v. Johnson*, 2008 WL 2223259, *3 (M.D. Ga. 2008) (citing *Luong*). *See also Thompson v. Sec'y, Fla. Dep't of Corr.*, 551 F. App'x. 555, 557 n.3 (11th Cir. 2014) (per curiam) (unreported op.) (citing *Luong*); *Brown v. McGowan*, 2014 WL 4538056, *7 (N.D. Fla. 2014) (same); *Kirkland v. Perkins*, 2014 WL 1333214, *13 n.7 (S.D. Fla. 2014) (same).

In this case, Plaintiff's injuries do not rise to a level which is greater than *de minimus* in nature. Plaintiff's Complaint only describes that Plaintiff hit his head, allegedly "fell unconscious" while fighting with Veillard, (Doc. 31 at ⁋ 37), and allegedly a "chunk of flesh" was removed from his abdomen. *See* (Doc. 31 at ⁋ 38). The Complaint continues to describe that Plaintiff's injuries as "severe," "permanent," and "significant" without providing any greater detail about the extent of his injuries. *See* (Doc. 31 at ⁋⁋ 74, 91, 112, 123).

During Plaintiff's deposition, Plaintiff describes his injuries as being to his back, shoulder, head, and a bite on his abdomen. (Exhibit Q at 78-82). Only one of Plaintiff's injuries, specifically his shoulder injury, was treated with anything

greater than just ibuprofen. *Id*. Plaintiff alleged that he received x-rays to his shoulder which were never followed up on. *Id*.

A review of Plaintiff's medical records demonstrates that he did not have any injuries on November 8, 2022. (Exhibit E at 7, 11, 14, 16). Plaintiff's treating nurse, Everette, has confirmed that the medical records she created on the date are accurate and true. (Exhibit T).

Moreover, in reviewing Plaintiff's medical records even further, Plaintiff complained of injuries on November 10, 2022, and he was medically assessed by a different nurse on November 16, 2022. (Exhibit E at 20-24). Plaintiff's November 16, 2022, assessment revealed that he had a superficial abrasion to his left armpit and right upper abdomen area. *Id*. at 21. Plaintiff's pain was recorded as 2 of 10 and his superficial abrasion was treated with acetaminophen. *Id*. at 22.

Later, on November 11, 2022, Plaintiff had an additional point of contact with medical for a shot, which he refused. (Exhibit E at 26-27). At the time, Plaintiff made no medical complaints. On November 13, 2022, Plaintiff was medically assessed again by Everett, and no injuries were noted. *Id*. 30. Plaintiff was again seen by Everett on November 23, 2022, with no injuries reported. *Id*. at 34-35. Plaintiff seen on December 8, 2022, by a medical doctor to take lab tests, and no additional injuries were reported. *Id*. at 36. On December 15, 2022, Plaintiff

was given a periodic screening in which he indicated that his health has "been great so far," and signed the medical record confirming his statement. *Id*. at 40-44.

Despite Plaintiff indicating during his deposition that he underwent x-rays which were never followed up on, Plaintiff's medical records do not demonstrate his receiving any x-rays related to the November 8, 2022, alleged fight. To be fair, there is a back x-ray taken on January 6, 2023, but there is no indication that the x-ray was related to the November 8, 2022, incident. See (Exhibit E at 50). Even more tellingly, the x-ray came back negative as to any issues. *Id*. Instead, at most, Plaintiff received acetaminophen, after his November 16, 2022, sick call.

The only other injuries claimed are alleged psychological ones, thus, Plaintiff's injuries are the definition of *de minimus* injury. *Tate v. Rockford*, 497 F. App'x 921, 925 (11th Cir. 2012) (unreported op.) (holding that "a laceration on [a prisoner's] forehead, several small abrasions and cuts, and a swollen right eye" are *de minimis* injuries); *Dixon v. Toole*, 225 F. App'x 797, 799 (11th Cir. 2007) (unreported op.) (bruising is only a *de minimis* injury, insufficient to satisfy the physical injury requirement of 42 U.S.C. § 1997e(e)); *Wineston v. Pack*, 2009 WL 3126252 (N.D. Fla. 2009) (finding a minor contusion to the forehead with minimal swelling for which he was given Advil for three days was *de minimis*); *Radford v. Johnson*, 2006 WL 2927578 (M.D. Ga. 2006) (allegation of sore shoulder, sore

abdomen, and swelling of face are, at most, *de minimis* and insufficient to prove physical injury to support allegation of excessive force).

Lacerations are insufficient injuries for recovery. *See e.g. Cain v. Commonwealth of Va.*, 982 F. Supp. 1132, 1135 & n. 3 (E.D. Va. 1997) (unbearable headaches, vision loss, numbness in arms and legs, joint pain, stomach cramps, lower back pain, and blackouts were not a sufficient physical injury to recover under § 1997e(e) for mental injury); *Quinlan v. Pers. Transp. Servs. Co.*, 329 F. App'x 246, 249 (11th Cir. 2009) (complaints of temporary chest pain, headache, difficulty breathing, and back pain which did not require immediate medical attention were *de minimis* and insufficient to surmount § 1997e's bar); *Pinkston v. DeTella*, 1997 WL 158343 at *3 (N.D. Ill. Mar. 31, 1997) (headaches not a sufficient physical injury under § 1997e(e)). *See also Ledlow v. Givens*, Slip Copy, 2012 WL 6176471 at *3 (11th Cir. 2012) (finding that a bloody nose and a two-centimeter laceration requiring six sutures were *de minimis* injuries); *Mann v. McNeil*, 360 F. App'x 31, 32 (11th Cir. 2010) (unreported op.) (scrapes and marks on knees and legs were the type of injuries barred by §1997e(e)); *Harris*, 190 F. 3d at 1286-87 (finding that a "dry shave" – shaving with an unlubricated razor – was not the kind of physical injury cognizable under § 1997e(e)); *Daughtry v. Moore*, No. 08-00215-KD-C, 2009 WL 1151858, *5 (S.D. Ala. Apr. 27, 2009) (bumps on neck and shoulders insufficient to satisfy the physical injury requirement of §

1997e(e)).  Temporary pain and bruising are also characterized as de minimis. *Tate*, 497 F. App'x at 925; *Quinlan*, 329 F. App'x at 249; *Dixon*, 225 F. App'x at 799; *Nolin v. Isbell*, 207 F. 3d 1253, 1258 n.4 (11th Cir. 2000); *Siglar*, 112 F. 3d at 193-94 (sore, bruised ear type of injury barred by § 1997e(e)); *Luong*, 979 F. Supp. at 485-86 (bruises and abrasions barred by § 1997e(e)).

In this case, Plaintiff's request for relief includes compensatory damages. (Doc. 31). Based on § 1997e(e), and *Harris* and its progeny, Plaintiff is not entitled to any claim for compensatory based on his Complaint as he does not allege a sufficient physical injury. However, Plaintiff is barred from recovery of such damages by § 1997e(e), and the interpretation of the statute by *Harris* and its progeny. *See* 42 U.S.C. § 1997e(e); *Harris*, 190 F.3d 1279; *Al-Amin v. Smith*, 637 F.3d at 1197-98; *Fraizer*, 264 Fed. Appx. at 815. As a result, based on Plaintiff's injuries not being greater than *de minimus* in nature, Plaintiff is not entitled to any damages as he has not requested any other cognizable relief.

## VII.  Plaintiff is not entitled to Punitive Damages as a matter of law.

Punitive damages are statutorily barred. "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. §3626(a)(1)(A). Moreover, to grant prospective relief, the Court must "fin[d] that such relief is narrowly drawn, extends no further than necessary to

correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id.* Furthermore, the Court must "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id.*

Section 3626(a)(1)(A) applies to punitive damages because "prospective relief" is defined under the statute as "all relief other than compensatory monetary damages." 18 U.S.C. §3626(g)(7) (2023). *See also Johnson v. Breeden*, 280 F.3d 1308, 1325 (11th Cir. 2002) (finding that the plain language of the definition provision is clear and that "punitive damages are prospective relief").

As a categorical matter, punitive damages cannot satisfy the strict requirements of section 3626(a)(1)(A). First, punitive damages are never necessary to correct a violation of a Federal right. This is because "correction" of violation is accomplished through compensatory damages and punitive damages are, by their nature, never corrective:

> Although compensatory damages and punitive damages are typically awarded at the same time by the same decisionmaker, they serve distinct purposes. The former are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct. The latter, which have been described as "quasi-criminal," operate as "private fines" intended to punish the defendant and to deter future wrongdoing. A jury's assessment of the extent of a plaintiff's injury is essentially a factual determination, whereas its imposition of punitive damages is an expression of its moral condemnation.

*Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432 (2001) (cleaned up).

Second, even if an award of punitive damages could be thought reasonably "necessary" to correct a legal violation, such an award could not satisfy the additional, stringent limitations imposed by the PLRA—i.e., the requirements that the relief be "*narrowly drawn*," "extend[] *no further than necessary* to correct the violation of the Federal right," and be "*the least intrusive means necessary* to correct the violation of the Federal right." 18 U.S.C. §3626(a)(1)(A) (emphases added). *See United States v. Whyte*, 928 F.3d 1317, 1328 (11th Cir. 2019) (explaining that it is a "cardinal rule" of statutory interpretation that courts try to give "effect… to every clause… of a statute") (citation and internal quotation marks omitted)). Even if deterring future violations is conceptualized as one way of correcting a violation, punitive damages are never the "narrow[est]" or "least intrusive" way of effectuating such a correction. As the Supreme Court has explained, "[d]eterrence is… an important purpose of" the tort system created by section 1983, but such deterrence primarily "operates through the mechanism of damages that are compensatory—damages grounded in determinations of plaintiffs' actual losses." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (emphasis in original). Similarly, the Supreme Court has made "clear" that "nominal damages," not punitive damages, "are the appropriate means of

'vindicating' rights whose deprivation has not caused actual, provable injury." *Id.* at 308 n.11. Even assuming punitive damages are also an "appropriate" means of vindicating such rights, they are not less burdensome, more narrowly tailored, or less intrusive than nominal damages.

Although the Eleventh Circuit held in *Hoever v. Marks*, 993 F.3d 1353, 1364 (11th Cir. 2021), that "[42 U.S.C.] §1997e(e) permits claims for punitive damages without a physical injury requirement," it expressly declined to consider whether section 3626 bars punitive damages. *Id.* at 1364 fn. 5. Because the Court did not consider the argument presented here, *Hoever* is not controlling on the issue. Moreover, in *Johnson v. Breeden*, 280 F.3d 1308, 1325-26 (11th Cir. 2002), the Eleventh Circuit interpreted section 3626(a)(1)(A) in a manner that indicates that it does not bar punitive damages. However, the argument that section 3626 categorically bars punitive damages was not discussed, let alone rejected, in *Johnson*. Therefore, *Johnson* is not dispositive on the issue.[4] *See United States v. Mitchell*, 271 U.S. 9, 14 (1926) ("It is not to be thought that a question not raised by counsel or discussed in the opinion of the court has been decided merely because it existed in the record and might have been raised and considered."); *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the

---

[4] To the extent that this Court is bound by *Johnson*, the argument that section 3626 bars punitive damages is presented here to preserve the issue for appellate review.

record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

The Circuit Courts apparently have yet to directly address whether punitive damages are barred by section 3626. *See e.g.*, *Hoever*, 993 F.3d at 1364 n.5 ("We decline the government's invitation to address the availability of punitive damages in prison condition cases under 18 U.S.C. § 3626, as it falls outside the scope of the *en banc* briefing question posed to the parties.") (citation omitted); *Al-Amin v. Smith*, 637 F.3d 1192, 1199 n.10 (11th Cir. 2011) ("Since we find that § 1997e(e) prevents Al–Amin, in the absence of physical injury, from offering evidence supporting an award of punitive damages in this action, we need not consider the validity or timeliness of Defendants' alternative argument that 18 U.S.C. § 3626 prohibits punitive damage recovery as well."), *overruled by Hoever*, 993 F.3d at 1363-64; *Vaughn v. Cambria Cnty. Prison*, 709 Fed. Appx. 152, 155 n.2 (3d Cir. 2017) ("The Magistrate Judge stated that punitive damages were unavailable under 18 U.S.C. § 3626(a)(1)(A). … We offer no opinion on this issue at this time, and defer consideration of it in this proceeding because liability has not yet been found.") (citation omitted); *Wilkerson v. Stalder*, 329 F.3d 431, 434 n.3 (5th Cir. 2003) ("The district court chose to defer ruling on the prison officials' claim that the Prison Litigation Reform Act bars the inmates' claim for punitive damages until such time as liability is found. Therefore, this issue is not properly

before the court on appeal.") (citation omitted). Because of the apparent absence of Circuit precedent directly addressing this argument, Defendants rely on the plain meaning of the text of section 3626.

Punitive damages are never "necessary to correct the violation of" a Federal right because, "[i]n the strictest sense of the term, something is 'necessary' only if it is essential." *Ayestas v. Davis*, 584 U.S. 28, 44-45 (2018) (citing Webster's Third New International Dictionary 1510 (1993); 10 Oxford English Dictionary 275–276 (2d ed. 1989)). *See also Necessary*, Black's Law Dictionary (11th ed. 2019) (defining necessary to mean "essential"). And the text and context of section 3626(a) indicate that Congress intended to use the term "necessary" in the strict sense of that word. Unlike the "necessary and proper clause" of Article I, Section 8, for example, section 3626 uses the term "necessary" in the context of a "strict limitation[]," not a broad authorization. *See Johnson*, 280 F.3d at 1323. Similarly, the immediately surrounding text provides that relief is barred unless it is "narrowly drawn," "extends no further than necessary to correct the violation of the Federal right," and is "the least intrusive means necessary to correct the violation of the Federal right. 18 U.S.C. §3626(a)(1).

Punitive damages, however, are not even an appropriate mechanism for "correcting" a legal violation; to the extent that damages serve a "corrective" function, that is what compensatory damages are for. By definition, "compensatory

damages" are "[d]amages <u>sufficient</u> in amount to indemnify the injured person for the loss suffered." *Damages*, Black's Law Dictionary (11th ed. 2019) (emphasis added). Accordingly, punitive damages are not even intended to "correct" a legal violation by making the injured party whole; still less are they an "essential" way of making the plaintiff whole.

Consistent with dictionary definitions, caselaw recognizes that punitive damages awards serve two purposes, "punishing unlawful conduct and deterring its repetition." *State Farm Mut. Auto Ins. Co v. Campbell*, 538 U.S. 408, 416 (2003) (quotation omitted). Neither of those purposes makes punitive damages "necessary to correct" a violation of Federal law. By definition, one may "correct" a violation of law without "penalizing" past misconduct or "deterring" potential future violations. Ordinary English usage confirms that proposition. For example, one does not "correct" a future error before it happens; one seeks to deter it—i.e., to prevent it from happening in the first place. Likewise, punishment is not strictly necessary to remedy a wrong; instead, punishment serves other goals, like deterrence or retribution. *Cf. Kokesh v. S.E.C.*, 137 S. Ct. 1635, 1642 (2017) (distinguishing between remedies that are penalties, i.e. those that seek to punish, and those that seek to "compensate[e] a victim for his loss").

Moreover, reading section 3626 to categorically bar punitive damages does not prevent the court from fully remediating ongoing violations. In many civil

actions with respect to prison conditions, a plaintiff alleges that his federal rights are being violated on an ongoing basis. In those cases, prospective relief may be warranted—for example, in the form of declaratory or injunctive relief that requires prison officials to "correct" their violation by bringing their conduct into conformity with the law. As this Court has explained, albeit in the context of interpreting section 1997e(e), such relief provides a "reasonably adequate opportunity" to seek redress for constitutional violations," even if prisoners "may not recover monetary damages for such claims." *Al-Amin*, 637 F.3d at 1197 (quotation marks and citation omitted).

What is more, to clear the high bar of the PLRA, relief other than compensatory monetary damages must extend "no further than necessary to correct the violation of the Federal right of [the] particular plaintiff or plaintiffs." 18 U.S.C. §3626(a)(1) (emphasis added). Punitive damages awards aimed at protecting inmates generally (e.g., through deterrence), rather than correcting the violations suffered by the particular plaintiff bringing the suit, are thus prohibited. Moreover, not only must punitive damage awards be plaintiff-specific, they must be defendant-specific. Section 3626(a)(1) requires that they be "narrowly drawn," which means that any deterrent must be aimed at deterring the particular defendant, not the correctional facility or government in general.

Because this Court cannot find that punitive damages are necessary to correct a violation of Plaintiff's rights or are the least intrusive means necessary to do so, punitive damages are barred by section 3626(a)(1)(A). Therefore, Plaintiff's request for punitive damages must be dismissed.

## <u>CONCLUSION</u>

**WHEREFORE**, for the foregoing reasons, Defendants respectfully request this Court enter Summary Judgment in their favor as described above.

Respectfully Submitted,

**ASHLEY MOODY**
**ATTORNEY GENERAL**
Office of the Attorney General
The Capitol PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872

/s/ Erik Kverne
Erik Kverne
Assistant Attorney General
Florida Bar No.: 99829
Erik.Kverne@myfloridalegal.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Defendants' Motion for Summary Judgment* was e-filed electronically and served electronically on Plaintiff's counsel of record through CM/ECF on January 6, 2025.

/s/ Erik Kverne
Erik Kverne
Assistant Attorney General
Florida Bar No.: 99829
Erik.Kverne@myfloridalegal.com

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

**I HEREBY CERTIFY** that the above Motion totals **874** words and that the Supporting Memoranda required by N.D. Fla. Loc. R. 7.1(E) contains **7,027** words, totaling **7,901** words, not exceeding 8,000 total word maximum created by N.D. Fla. Loc. R. 7.1(F).

/s/ Erik Kverne
Erik Kverne
Assistant Attorney General
Florida Bar No. 99829
Erik.Kverne@myfloridalegal.com