IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**BERNARD D. WILSON**
**DC# T24935,**

    Plaintiff,

v.                                          Case No.: 5:23-cv-253-TKW/MJF

**INGRAM, ET AL.,**

    Defendants.
_____/

**DEFENDANTS' MOTION TO STRIKE AND EXCLUDE EVIDENCE**

    **Jones**, **Causey**, **Granger**, and **Ingram**, ("Defendants"), hereby moves to strike Plaintiff's Exhibit he utilizes in support of his Response to Defendants' Motion for Summary Judgment, (Doc. 78-10),[1] on the following grounds:

**BACKGROUND AND PROCEDURAL HISTORY**

1.     On January 6, 2025, Defendants filed their Motion for Summary Judgment. (Doc. 74). Within their Motion for Summary Judgment, Defendants argue that based on Plaintiff's deposition testimony, objective medical records, and a declaration from the nurse that medically assessed Plaintiff, Plaintiff is not entitled to compensatory damages due to the legal framework of the Prison

---

[1] Each document filed in this case as part of the Electronic Case File will be referenced as "Doc." followed by the document number.

1

Litigation Reform Act. *See Id.* at 18-25.

2. On February 12, 2025, Plaintiff filed a Response to Defendants' Motion for Summary Judgment. (Doc. 79). *See also* (Docs. 78 – 78-17). As an exhibit to be considered in his Response, Plaintiff provides a declaration purporting to detail his injuries. *See* (Doc. 78-10). Within his declaration, created one day prior to the filing of Plaintiff's Response, he provides new details about his alleged injuries that were not described during his deposition. *Id*. at ¶¶ 3-15.

3. Defendants move to strike Plaintiff's Exhibit as it is a sham affidavit prohibited by *Van T. Junkins & Assoc. Inc. v. U.S. Indust. Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

## MEMORANDUM OF LAW

The Federal Rules of Civil Procedure allow parties to object to facts that are not supported by admissible evidence. Fed. R. Civ. P. 56(c)(2). As part of Plaintiff's exhibits, Plaintiff provides a brand-new declaration, created after Discovery closed, and one day prior to the filing of his Response to Defendants' Motion for Summary Judgment. *See* (Doc. 78-10). Within his declaration, Plaintiff provides testimony about his alleged injuries that were not described during his deposition despite being questioned by both Defendants and his own counsel. As a result, Defendants move to strike Plaintiff's declaration as being admissible for purposes of consideration on a Motion for Summary Judgment or for any future

purpose.

The sham affidavit rule prevents a party from creating an issue on summary judgment through the creation of an affidavit that merely contradicts, without explanation, previously given clear testimony. *Van T. Junkins & Assoc. Inc.*, 736 F.2d at 657. In this case, Plaintiff's Declaration contradicts his testimony provided under oath up until the filing of Plaintiff's Motion for Summary Judgment.

On September 24, 2024, Plaintiff's deposition was taken. *See* (Doc. 74-17 at 2). During his deposition, Plaintiff was asked about his injuries in this case by Defendants,

> Q. What injuries did you suffer?
>
> A. Back injury. I hit my head on the concrete. I had – my shoulder was screwed up. Had a bit – bite mark on my stomach and my rib cage, around my abdomen. I had several abrasions and lacerations.
>
> Q. So your back, what treatment did you receive for your back?
>
> A. After I was seen by medical?
>
> Q. At any point.
>
> A. At any point since when, sir?
>
> Q. Since – since the date of the incident.
>
> A. Yes, my lower back around my tailbone area.
>
> Q. Okay. What treatment did you receive?
>
> A. Oh. You said what treatment did I receive?
>
> Q. Yes.

A. I received Naproxen. First it was ibuprofen, anesthesia form, Naproxen. And the Naproxen, they – they put me on – several x-rays was conducted. I was just given pain [sic] for pain, a muscle relaxant that was through a single dose. I don't know the name of it. It was very strong. As far as medication, just treatment.

Q. Okay. And those x-rays you mentioned, they came back negative?

A. I never did a follow-up, sir.

Q. Okay.

A. Medical doesn't follow-up.

Q. So assuming that because you never did a follow-up, they came back negative.

A. I can't assume that, sir. Sometimes medical just lazy.

Q. Okay. Your ribs, you mentioned your ribs. What injuries did you suffer to your ribs?

A. I didn't say my ribs. I said my rib cage area, my abdomen where he bit me.

Q. Okay, so he bit you.

A. Yes.

Q. Where did he bite you?

A. In my abdomen, around my rib cage area.

Q. Where specifically? Your abdomen is a big area. So where in your abdomen? Your left side? Your right side? Your stomach area? Your back? Go ahead.

A. The right side of my rib cage area, sir.

Q. Okay. Down to your waist?

A. My rib cage does not reach to my waist, sir.

4

Q. I know it does not reach to your waist, but I'm saying, it was – so it was directly on your ribs on your right side?

A. My rib cage area, sir, on the right side, sire. Abdomen area, sir, right under my breast or right under my pectoral or –

Q. So, okay, Son the front –

A. Would you want me to stand up and show you, sir?

Q. Sure, sure, that would be helpful, yes.

A. So right up here. With the handcuffs, sir, I can't get the chains up. It was right here.

Q. Okay. All right. So on the front part. Basically, like the front part of your chest area, under your pectoral muscle –

A. Yes.

Q. – is what you're saying.

A. Rib cage area, abdomen.

Q. Okay. All right. And what treatment did you receive for that?

A. Nothing. Nothing.

Q. Okay. Didn't become infected?

A. No, sir.

Q. Okay. What other injuries did you suffer? You said you hit your head, right?

A. Yes, sir.

Q. All right. What – what treatment did you receive for hitting your head?

A. All of that came with ibuprofen, sir. All the same treatment was basically pain medication.

> Q. Okay.
>
> A. Right until now, I'm still taking pain medications.
>
> Q. And you said abrasions, right?
>
> A. Yes, sir.
>
> Q. What abrasions did you suffer?
>
> A. Had bruises on my left and right shoulders from the – from the steel bunk, from the concrete. Had – what you call it? – hickeys on my head. Several hickeys on my head. And my knees had abrasions on them, like bruises and stuff like that.
>
> Q. And what treatment did you receive for that?
>
> A. Same thing, medication.
>
> Q. Okay. Any other injury that we didn't go over?
>
> A. Any other injury?
>
> Q. Yeah.
>
> A. No, sir.

(Doc. 74-17 at 78-82). Later, Plaintiff's counsel asked a couple of questions which further clarified Plaintiff's injuries:

> Q. Now, you told Mr. Kverne that you had abrasions and lacerations –
>
> A. Yes, sir.
>
> Q. – is that correct?
>
> A. Yes, sir.
>
> Q. And so he repeated back to you, you had abrasions, but he didn't repeat lacerations. Did you mean to leave that out?

6

A. No, sir.

*Id.* at 108. No further questions were asked about Plaintiff's injuries, and he did not further elaborate about his injuries during his deposition.

However, on February 11, 2025, Plaintiff created a declaration where he details new injuries never mentioned during his deposition. *See* (Doc. 78-10). Plaintiff details that his

- "[R]ight eyebrow was split, at the corner of my eye, and the wound was bleeding." (Doc. 78-10 at ¶ 5).

- Plaintiff states that his "lip was busted on the inside where the lip hit my teeth, as teeth dug through the interior of my lip, and took two to three weeks to heal." (Doc. 78-10 at ¶ 6).

- Plaintiff alleges that the bite Veillard caused "bled profusely and blood was everywhere from that wound." (Doc. 78-10 at ¶ 7).

- Plaintiff alleges that the wound took a month to heal and that he has a visible scar. (Doc. 78-10 at ¶¶ 8-9).

- Plaintiff alleges that he suffered from dizziness for about 10 days and that "[i]f I sat up too fast, I would have to hold onto something and wait and clear my head." (Doc. 78-10 at ¶ 10). Plaintiff alleges he "felt nauseated and queasy for about 4-5 days after the incident." *Id.* at ¶ 11.

- Plaintiff alleges that he "had a lump the size of half a ping pong ball from hitting my head which took a month for the swelling to complete disappear." (Doc. 78-10 at ¶ 12). The lump was allegedly "painful and [he] could not sleep on the back of my head." *Id.*

- Finally, Plaintiff alleges that "[f]rom hitting my back on the metal bunk, I continue to suffer. I get a sharp shooting pain in my left leg when I put weight on my left foot, and it is difficult for me to get up if I sit for too long." (Doc. 78-10 at ¶ 15).

7

Within Plaintiff's newest declaration Plaintiff has described a series of injuries which were never mentioned during his deposition despite clear questioning based on his statements at the time. Plaintiff's counsel also questioned Plaintiff about his injuries, and he never mentioned the additional injuries. (Doc. 74-12 at 108).

Moreover, the injuries referenced are not supported by Plaintiff's medical records in any manner. Plaintiff never reported the newly articulated alleged injuries to any nurse or medical professional, despite several points of contact in which he had the opportunity to do so. (Doc. 74-5 at 7, 11, 14, 16, 20-24, 26-27, 30, 34-36, 40-44, 50). *See also* (Doc. 74 at 21-23) (Defendants' MSJ detailing Plaintiff's points of contact with medical). Even given Plaintiff's allegations about Ingram interfering with his medical treatment on the date of the incident, *see e.g.* (Doc. 79 at 14-15), Plaintiff had several opportunities to report his newly alleged injuries to other medical professionals and never did so. *See* (Doc. 74-5 at 7, 11, 14, 16, 20-24, 26-27, 30, 34-36, 40-44, 50). The injuries alleged in his declaration are not referenced anywhere in his medical records and run contrary to the clear statement he made after the incident to Nurse Everette. *See Id.* at 7, 11, 14, 16. *See also* (Doc. 74-20) (declaration of Plaintiff's treating nurse indicating that her records are correct).

Tellingly, Plaintiff's declaration was created one day before the filing of his

Response to Defendants' Motion for Summary Judgment. *See* (Docs. 78; 78-10 at 3). The declaration was clearly created in contemplation of Defendants' Motion for Summary Judgment and is intended to rebut the argument presented by Defendants that Plaintiff did not suffer an injury which is greater than *de minimis* in nature and is not cognizable for compensatory damages under the PLRA. *See* (Doc. 74 at 18-25).

Based on Plaintiff's new declaration, Defendants are extremely prejudiced. Defendants have had no opportunity to cross-examine Plaintiff about his new injuries despite his deposition being taken. Defendants questioned Plaintiff based on the injuries **he described** during his deposition to both undersigned counsel and his own counsel. Plaintiff's description of new injuries in his declaration is completely undermined by Defendants' final question of, "[a]ny other injury that we didn't go over?" and his response of "[n]o sir." *See* (Doc. 74-17 at 82-83).

More importantly, Defendants' Motion for Summary Judgment was drafted and filed based on the testimony provided during his deposition. Defendants *relied* on the completeness and accuracy of Plaintiff's answers, coupled with what Plaintiff's own medical records demonstrate that he did not suffer an injury cognizable under the PLRA. Consideration of Plaintiff's declaration completely prejudices Defendants because it introduces new evidence never before presented and contrary to Plaintiff's previous testimony. The Sham Affidavit Rule, as

described in *Van T. Junkins* is intended to prevent a party from prejudicing the other party in such a manner.

## CONCLUSION

**WHEREFORE**, Defendant respectfully requests that this Court enter an Order striking Plaintiff's Declaration. (Doc. 78-10).

        Respectfully submitted,

        **JAMES UTHMEIER**
        **ATTORNEY GENERAL**
        Office of the Attorney General
        The Capitol, PL-01
        Tallahassee, Florida 32399-1050
        Telephone: (850) 414-3300
        Facsimile: (850) 488-4872

        /s/ Erik Kverne
        Erik Kverne
        Special Counsel – Assistant Attorney General
        Florida Bar No. 99829
        Erik.Kverne@myfloridalegal.com

## CERTIFICATE OF COMPLIANCE

**I HEREBY CERTIFY** that undersigned counsel has conferred with Plaintiff's counsel of record pursuant to N.D. Local Rule 7.1(B) prior to the filing of this Motion. Plaintiff's counsel indicated that there is an objection to the sought of relief in this Motion.

/s/ Erik Kverne
Erik Kverne
Special Counsel – Assistant Attorney General
Florida Bar No. 99829
Erik.Kverne@myfloridalegal.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing *Defendant's Motion to Strike and Exclude Evidence* was e-filed and served electronically on Plaintiff's counsel of Record through CM/ECF on February 26, 2025.

/s/ Erik Kverne
Erik Kverne
Special Counsel – Assistant Attorney General
Florida Bar No. 99829
Erik.Kverne@myfloridalegal.com

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

**I HEREBY CERTIFY** that the above Motion and memorandum totals **1,930** words, not exceeding 8,000 total word maximum created by N.D. Fla. Loc. R. 7.1(F).

/s/ Erik Kverne
Erik Kverne
Special Counsel – Assistant Attorney General
Florida Bar No. 99829
Erik.Kverne@myfloridalegal.com