UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BERNARD D. WILSON,

    Plaintiff,

vs.

INGRAM, et al.,

    Defendants.

Case No. 5:23-cv-00253-TKW-MJF

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO STRIKE AND EXCLUDE EVIDENCE (Doc. 86)**

    Plaintiff Bernard Wilson responds and objects to Defendants' Motion to Strike and Exclude Evidence ("Motion"), Doc. 86. Plaintiff's Declaration (Doc. 78-10) filed in support of his Response to Defendants' Motion for Summary Judgment (Doc. 78) is not a "sham" and should be considered by this Court.

**Memorandum of Law**

    On February 12, 2025, Plaintiff filed his Response to Defendants' Motion for Summary Judgment (Doc. 78) along with his Declaration (Doc. 78-10).

    "When a party has given clear answers to <u>unambiguous</u> questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely

contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) (emphasis added). An affidavit could be disregarded as a sham "[i]f there were no way that" the conflicting statements "could be read together." *See Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1161 (11th Cir. 2012) (emphasis added).

In *Strickland*, the plaintiff, a railway worker, testified that he applied "normal" and "reasonable" force to a wheel in an effort to disengage a handbrake. Later, after the defendant employer filed its motion for summary judgment, the plaintiff submitted an affidavit "modifying that earlier statement," stating that his efforts were greater than normal and "beyond the usual and reasonable force that should have been necessary to release that [handbrake]." *Id.* at 1160. The Court opined that "it is possible that the apparent contradiction derives not from purposeful fabrication but instead from dialectical misunderstanding" and that "[u]nder such circumstances, any apparent contradiction becomes an issue of credibility or goes to the weight of the evidence." *Id.* at 1162. Despite "the potential conflict" between the affidavit and deposition testimony, it was for a jury to make the necessary credibility determinations. *Id.*

2

"[A] genuine issue can exist by virtue of a party's affidavit even if it conflicts with earlier testimony in the party's deposition." *Van T. Junkins*, 736 F.2d at 659 (citing *Kennett-Murray Corp. v. Bone*, 622 F.2d 887 (5th Cir.1980)).[1] "In considering a motion for summary judgment, a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition." *Kennett-Murray Corp.*, 622 F.2d at 893. "An opposing party's affidavit should be considered although it differs from or varies his evidence as given by deposition or another affidavit and the two in conjunction may disclose an issue of credibility." *Id*.

### A.   Plaintiff's Declaration should not be deemed untimely.

Defendants suggest Wilson's Declaration should be deemed untimely because it was provided for the first time with his response to the Defendants' motion for summary judgment. Defendants cite no authority for excluding the Declaration procedurally. *See* Motion. Notably, Defendants themselves filed a Declaration, never before seen by the Plaintiff, contemporaneously with their Motion for Summary Judgment. (Doc. 74-20,

---

[1] The Eleventh Circuit split from the Fifth Circuit on October 1, 1981. Fifth Circuit decisions from before the split are considered binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981).

3

Declaration of Nurse Kilee Everett). Indeed, the Florida Attorney General's Office, which represents the Defendants in this case, has elsewhere, through the same defense attorney, filed a completely new declaration, replete with factual assertions, in support of a motion for summary judgment *more than a month* after filing its motion, and well after the discovery window had closed. *See Currie v. McKinnie*, case no. 5:23-cv-00183, Northern District of Florida, Docs 78, 89, 89-1.

Defendants have asserted no basis to procedurally exclude the Declaration.

### B. Plaintiff's Declaration is not inconsistent with his deposition testimony.

During Plaintiff's deposition, Defense counsel ambiguously asked about "injuries" generally but failed to inquire further into the specific nature, extent and history of the injuries. Any paucity of information regarding Plaintiff's injuries in the deposition is due to Defense counsel's failure to question the Plaintiff in depth and should not result in striking Plaintiff's Declaration.

Defense counsel's questions regarding injuries focused exclusively on what injuries Plaintiff suffered, where on Plaintiff's body the injury was suffered, and what treatment Plaintiff received. The complete list of Defense counsel's questions inquiring into Plaintiff's injuries follows:

4

- "What injuries did you suffer?" Wilson Deposition ("Depo"), Doc. 74-17 at 77:6.

- "So your back, what treatment did you receive for your back?" *Id.* at 77:12-13.

- "What treatment did you receive?" *Id.* at 77:17.

- "And those x-rays you mentioned, they came back negative?" *Id.* at 78:4-5.

- "So assuming that because you never did a follow-up, they came back negative." *Id.* at 78:9-10.

- "Your ribs, you mentioned your ribs. What injuries did you suffer to your ribs?" *Id.* at 78:13-14.

- "Where did he bite you?" *Id.* at 78:19.

- "Where specifically? Your abdomen is a big area. So where specifically in your abdomen? Your left side? Your right side? Your stomach area? Your back?" *Id.* at 78:21-24.

- "Down to your waist?" *Id.* at 79:2.

- "I know it does not reach to your waist, but I'm saying, it was -- so it was directly on your ribs on your right side?" *Id.* at 79:4-6.

- "So on the front –" *Id.* at 79:10.

- After Plaintiff stands and demonstrates, Defense counsel asks: "All right. So on the front part. Basically, like the front part of your chest area, under your pectoral muscle – […] -- is what you're saying." *Id.* at 79:16-20.

- "And what treatment did you receive for that?" *Id.* at 79:23.

- "Didn't become infected?" *Id.* at 79:25.

- "What other injuries did you suffer? You said you hit your head, right?" *Id.* at 80:2-3.

5

- "What -- what treatment did you receive for hitting your head?" *Id.* at 80:5-6.

- "And you said abrasions, right?" *Id.* at 80:12.

- "What abrasions did you suffer?" *Id.* at 80:14.

- "And what treatment did you receive for that?" *Id.* at 80:21.

- "Any other injury that we didn't go over?" *Id.* at 80:23-24.

Mr. Wilson admitted to being nervous in his deposition. For example, when asked if there was anything more he could remember about specific defendants he stated, "I mean, something else may come to me if I'm not under so much stress because I'm -- I'm sort of nervous trying to get everything out, trying to remember everything at one time, so -- but, again, not at this moment." Depo. 25:11-15. In the heat of the deposition, Mr. Wilson admittedly did not mention his right eyebrow being split, as he did recall in his Declaration. (Doc. 78-10 at ¶ 5). And in his deposition he did not recall the interior of his lip being busted, as he did recall in his Declaration. *Id.* at ¶ 6.

Putting aside those two injuries—split eyebrow and busted lip—none of the other statements from Plaintiff's declaration which Defendants cite in their Motion are inconsistent with Mr. Wilson's deposition. In the deposition, Defense counsel asked what injuries Mr. Wilson suffered, in the past tense. *See* Defense counsel's questions, *supra*. Mr. Wilson then reasonably

6

answered by describing injuries as he suffered them at the time of the attack. Defense counsel followed up by asking about the bodily location and treatment of injuries, but never explored in greater detail the nature, extent, and history of the injuries, their effect on the Plaintiff, or whether any injuries were permanent.[2]

Pointing to the Declaration, Defendants state the following as never being mentioned in the deposition and therefore presumably inconsistent with the Declaration: "Plaintiff alleges that the bite Veillard caused [sic] 'bled profusely and blood was everywhere from that wound.' (Doc. 78-10 at ¶ 7)." Motion at 7.

But Mr. Wilson clearly testified he was bitten and there was blood all over the cell: "There's blood everywhere. You can't help but to see what's going on. <u>I got a bite mark on my stomach where I'm bleeding from</u>. There's blood all over my pillow. There was blood over [Veillard's] boxers. There's blood all over the cell." Depo. 49:24-50:3 (emphasis added).

---

[2] Compare with Florida's standard interrogatories to a plaintiff in a general personal injury case: "Describe each injury for which you are claiming damages in this case, specifying the part of your body that was injured, *the nature of the injury*, and, *as to any injuries you contend are permanent, the effects on you that you claim are permanent*. Fla. R. Civ. P. Form 1, General Personal Injury Negligence--Interrogatories to Plaintiff, question no. 11 (emphasis added).

7

Plaintiff did testify as to bleeding from the bite, and his Declaration statement is in no way inconsistent with his deposition.

Pointing to the Declaration, Defendants state as missing from the deposition and therefore inconsistent: "Plaintiff alleges that the wound took a month to heal and that he has a visible scar. (Doc. 78-10 at ¶¶ 8-9)." Motion at 7.

But in Mr. Wilson's deposition, Defense counsel failed to ask Mr. Wilson how long the wound took to heal or whether the damage was permanent. *See* Depo. There was no discussion on those topics because Defense counsel never asked. *See id.* It is unreasonable to simply ask "What injuries did you suffer?" and expect the deponent to opine on every aspect of that injury, including its description, nature, symptoms, course and history.

Pointing to the Declaration, Defendants state as missing and therefore inconsistent: "Plaintiff alleges that he suffered from dizziness for about 10 days and that '[i]f I sat up too fast, I would have to hold onto something and wait and clear my head.' (Doc. 78-10 at ¶ 10). Plaintiff alleges he 'felt nauseated and queasy for about 4-5 days after the incident.' Id. at ¶ 11." Motion at 7.

8

Once again, in Mr. Wilson's deposition, Defense counsel never inquired about Mr. Wilson's symptoms. Mr. Wilson, however, clearly testified he hit his head "on the concrete." Depo. 77:7. And when asked about treatment for his head he testified he received Ibuprofen. *Id.* at 80:5-8. Ten days of dizziness, as alleged in his Declaration, is entirely consistent with hitting his head on concrete. The deposition testimony regarding the head injury and the ten days of dizziness described in the Declaration are not only consistent but are easily "read together." *See Strickland*, 692 F.3d at 1161.

Also in his Declaration, Mr. Wilson attributed his nausea and queasiness to "hitting the back of my skull on concrete." Declaration ¶ 12. The symptoms of nausea and queasiness are no way contradicted by the deposition. And again, Defense counsel never asked or followed up about any such symptoms. *See* Depo. Once again, the deposition and Declaration statements are easily "read together." *See Strickland*, 692 F.3d at 1161.

Pointing to the Declaration, Defendants state as missing from the deposition and therefore inconsistent: "Plaintiff alleges that he 'had a lump the size of half a ping pong ball from hitting my head which took a month for the swelling to complete disappear.' (Doc. 78-10 at ¶ 12). The lump was

9

allegedly 'painful and [he] could not sleep on the back of my head.' *Id.*" Motion at 7.

But Mr. Wilson testified he hit his head on concrete, Depo. 77:7, "had several abrasions and lacerations," *Id.* at 77:10-11, and had several "hickeys" on his head, *Id.* at 80:14-18. Defense counsel never asked Mr. Wilson what he meant by the word "hickey," never asked him to describe the hickeys, never asked how big they were, never asked how long they lasted, and so on. *See* Depo. He also never delved into the details regarding the "abrasions and lacerations." *See id.* The absence of detail in the deposition is entirely the fault of Defense counsel. Moreover, the Declaration and deposition are not inconsistent and can be read together with zero incongruity.

Finally, pointing to the Declaration, Defendants state as missing from the deposition and therefore inconsistent: "Plaintiff alleges that '[f]rom hitting my back on the metal bunk, I continue to suffer. I get a sharp shooting pain in my left leg when I put weight on my left foot, and it is difficult for me to get up if I sit for too long.' (Doc. 78-10 at ¶ 15)." Motion 7.

But in his deposition, when asked what injuries he suffered, Mr. Wilson immediately responded "[b]ack injury," Depo. 77:6-6, and when asked what treatment he received mentioned "my lower back around my

10

tailbone area." *Id.* at 77:12-28. Defense counsel failed to ask whether Mr. Wilson had any ongoing symptoms, and so the topic was never discussed. The Declaration's chronic sharp shooting pain and difficulty getting up are entirely consistent with the lower back injury described in the deposition. Once again, the Declaration and deposition are consistent and easily "read together."

Defendants are not prejudiced by Plaintiff's Declaration, given the extensive opportunity they had to depose and question Mr. Wilson, and their own failure (through their counsel) to ask basic, rudimentary questions.

### C.  Any discrepancy between Mr. Wilson's injuries and his medical records is a matter for the jury.

Finally, Defendants argue that Mr. Wilson's injuries are not supported by his medical records. Motion at 8-9. But Mr. Wilson has consistently asserted his prison medical treatment to be an unreliable indicator of his actual health. As a key part of his lawsuit, he claims a nurse failed to treat him as a result of his being pressured by officers. Second Amended Complaint, Doc. 31 at 13-14. If true, then the nurse's Diagram of Injuries stating "No injuries stated or physically noted" (Doc. 74-5 at 14) and her subsequent declaration affirming same (Doc. 74-20), are false. Moreover, Mr. Wilson testified he had back x-rays and was treated with Naproxen and

11

Ibuprofen. Depo. 77:19-78:3. Asked about a follow-up, Mr. Wilson attributed the prison's medical system's failure to follow up to the system's laziness: "Sometimes medical [is] just lazy." Depo. 78:9-12. Any discrepancy between medical records and Mr. Wilson's assertions regarding his actual health is a question of fact for the jury.

## Conclusion

Wherefore, for the foregoing reasons, Plaintiff moves this Honorable Court to DENY Defendants' motion.

Respectfully submitted on March 12, 2025,

/s/ Joshua Tarjan
Joshua Tarjan (FBN 107092)
THE TARJAN LAW FIRM P.A.
12372 SW 82 Avenue
Pinecrest, FL 33156
(305) 423-8747
(323) 243-3186 (cell)
(786) 842-4430 (fax)
josh@tarjanlawfirm.com

/s/ James V. Cook
JAMES V. COOK, ESQ.
Florida Bar Number 966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, FL 32301
(850) 222-8080; 561-0836 fax
cookjv@gmail.com

*Attorneys for Plaintiff*

**CERTIFICATION PURSUANT TO L.R. 7.1(F)**

Pursuant to Local Rule 7.1(F), I hereby certify that the foregoing document contains 2,236 words, inclusive of headings, footnotes, and quotations, but exclusive of the case style, signature block and certificates.

*/s/ Joshua Tarjan*