## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

BERNARD D. WILSON,

     Plaintiff,

v.                              Case No.  5:23-cv-253-TKW-MJF

LIEUTENANT INGRAM, *et al.*,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

This counseled prisoner case, filed under 42 U.S.C. § 1983, is before the court on Defendants' motion for summary judgment and evidentiary materials. Doc. 74. Plaintiff filed an opposing memorandum with evidentiary materials. Docs. 78, 79. Defendants replied. Doc. 85. The undersigned recommends that Defendants' motion for summary judgment be granted in part and denied in part.

## I.    BACKGROUND

### A.    Wilson's Second Amended Complaint

Wilson is an inmate of the Florida Department of Corrections ("FDC"). Wilson initiated this civil action *pro se*. Doc. 1. On May 8, 2024, counsel appeared on Wilson's behalf and filed a second amended

complaint which is the operative complaint. Doc. 31. Wilson is suing four prison officials at the Jackson Correctional Institution: Benny Ingram, Jonathan Granger, Joshua Causey and Danielle Jones. Doc. 31; *see also* Doc. 63 (Pl.'s Voluntary Dismissal of Def. Step'han Stoudemire).

Wilson claims that Ingram, Granger, Causey, and Jones violated the First and Eighth Amendments, and conspired to violate Wilson's constitutional rights. Specifically, Wilson claims that Ingram, Granger, and Causey placed Wilson in a cell with Inmate Webens Veillard on November 8, 2022—knowing that Veillard posed a substantial risk of serious harm to Wilson's safety—in retaliation for Wilson filing grievances. Ingram, Granger, and Causey then allegedly watched as Wilson and Veillard fought for 30 to 40 minutes.

After the fight, Ingram allegedly interfered with Wilson getting immediate medical treatment by threatening Wilson not to report his injuries. Later, on November 13, 2022, Jones allegedly retaliated against Wilson for filing grievances about the November 8 incident by placing Wilson in confinement.

Wilson seeks compensatory and punitive damages.

**B.    Defendants' Motion for Summary Judgment**

Defendants assert that they are entitled to summary judgment because: (1) Wilson fails to demonstrate that any Defendant violated the First Amendment; (2) Wilson fails to state an Eighth-Amendment "procuring violence" claim against Ingram; (3) Wilson fails to demonstrate an Eighth-Amendment failure-to-protect claim against Jones and Causey; (4) Wilson's conspiracy claim is barred by the intra-corporate conspiracy doctrine; (5) Wilson's claim for compensatory damages is barred by 42 U.S.C. § 1997e(e); and (6) Wilson's claim for punitive damages is barred by 18 U.S.C. § 3626(a)(1)(A). Doc. 74.

## II.    THE SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson*, 477 U.S. at 248; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).

When addressing a summary-judgment motion, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009); *Beard v. Banks*, 548 U.S. 521, 529 (2006) (all "justifiable inferences" must be resolved in the nonmoving party's favor so long as there is a genuine dispute as to those facts). The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hickson*, 357 F.3d at 1260 (quoting *Anderson*, 477 U.S. at 251-52).

## A.    **The Eighth-Amendment Standard**

Wilson's Eighth-Amendment failure-to-protect and interference-with-medical-care claims are governed by the same standard. "Each of these claims requires a two-prong showing: an objective showing of a deprivation or injury that is sufficiently serious to constitute a denial of the minimal civilized measure of life's necessities and a subjective showing that the official had a sufficiently culpable state of mind."

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations and quotations omitted).

To satisfy the deliberate-indifference standard, the plaintiff "must show that the defendant acted with 'subjective recklessness as used in the criminal law.'" *Wade v. McDade*, 106 F.4th 1251, 1253 (11th Cir. 2024) (quoting *Farmer*, 511 U.S. at 839). "[T]he plaintiff must demonstrate that the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm." *Wade*, 106 F.4th at 1253.

## B.    <u>The First-Amendment Standard</u>

To prove a First-Amendment retaliation claim, "an inmate needs to show (1) that his speech or act was constitutionally protected, (2) that he suffered an adverse action from prison officials that would deter a person of ordinary firmness from engaging in such speech or act, and (3) that the protected speech or conduct and adverse action were causally connected." *Smith v. Governor for Ala.*, 562 F. App'x 806, 815 (11th Cir. 2014) (citing *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008)).

To establish a causal connection, "the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse action was

the prisoner's grievance[.]" *Smith*, 562 F. App'x at 815 (citing *Mosley*, 532 F.3d at 1278). "This motive analysis is subject to a burden-shifting framework." *Williams v. Radford*, 64 F.4th 1185, 1193 (11th Cir. 2023). First, the prisoner "must show that his constitutionally-protected speech was a 'motivating factor' in [the defendant's] decisions to carry out the adverse actions." *Williams*, 64 F.4th at 1193 (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

If the prisoner satisfies this burden, the defendant "must show that he would have implemented those adverse actions irrespective of [the prisoner's] complaints." *Williams*, 64 F.4th at 1193; *see also Mosley*, 532 F.3d at 1278 (applying the *Mt. Healthy* burden-shifting framework to the prison context: "[O]nce the plaintiff . . . establish[es] that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he . . . prevail[s] on . . . summary judgment." (quotation omitted)).

### III.   DISCUSSION

**A.   <u>The Claims Against Ingram, Granger, and Causey</u>**

1.   ***Failure to Protect and Retaliation Claims (Ingram, Granger, Causey)***

Wilson's Eighth-Amendment failure-to-protect claims and First-Amendment retaliation claims against Ingram, Granger, and Causey concern the same incident: Defendants' placing Wilson in Inmate Veillard's cell on November 8, 2022, and watching Wilson and Veillard fight inside the cell for 30 to 40 minutes.

Viewing the summary-judgment evidence in the light most favorable to Wilson, Ingram and Granger escorted Wilson to the cell occupied by Inmate Veillard. Doc. 74-17, Wilson Dep. 35:9-37:15.[1] Causey joined them at the cell. *Id.*, Wilson Dep. 40:10-17. All three Defendants (1) heard Wilson's and Veillard's panicked outcries that they could not be housed together because of a PREA incident and because Veillard would kill Wilson; (2) forced Wilson into the cell, commenting: "Get [your] ass in there and fuckin' fight," and that it was "[Wilson's] turn to be fucked

---

[1] Citations to page numbers of deposition transcripts are to page numbers of the original document and not the page number identified in the ECF header.

or [Wilson's] turn to be screwed or molested or something along those lines"; and (3) intermittently stopped at the cell window and watched Wilson and Veillard fight for roughly 30 to 40 minutes. Doc. 74-17, Wilson Dep. 33:13-24, 36:4-37:20, 38:6-24, 39:3-41:22, 43:5-53:5, 104:2-13; Doc. 74-10, Veillard Dep. 33:3-34:2, 35:9-37:25, 43:11-14, 47:3-5, 49:10-15, 51:1-11, 52:20-53:13, 55:11-15, 24-25.

Ingram and Granger do not seek summary judgment on the failure-to-protect claims, so these claims must be resolved through a trial. Ingram and Granger only seek summary judgment on Wilson's theory that their failure to protect Wilson was motivated—in whole or in part—by retaliation for Wilson filing grievances. Doc. 74 at 7-10. Causey moves for summary judgment on both the failure-to-protect and retaliation claims. *Id.* at 7-10, 11-16.

As outlined above, Wilson has presented sufficient evidence to survive summary judgment on his failure-to-protect claim against Causey. Wilson also has presented sufficient evidence to survive summary judgment on his retaliation claims against all three Defendants (Ingram, Granger and Causey). Wilson testified that while Granger was escorting Wilson to Veillard's cell, Granger stated: "'Well, you like to

write grievances and we'll show you how we deal with snitches.'" Doc. 74-17, Wilson Dep. 36:15-18. At Veillard's cell front, Ingram, Granger and Causey stated to Wilson: "'It's [your turn to be molested. Take it like a man. Stop being a coward. . . . This is what happens to snitches. You like to write grievances, well, it's like that.'" Wilson Dep. 33:13-22.

For the reasons set forth above, Defendants are not entitled to summary judgment on Wilson's Eighth-Amendment failure to protect claims, or Wilson's First-Amendment retaliation claims, against Ingram, Granger, and Causey.

### 2. *"Procuring Violence" Claim (Ingram)*

Wilson asserts an additional, independent Eighth-Amendment claim against Ingram for deliberate indifference and "procuring violence" by placing Wilson in the cell with Veillard on November 8, 2022, and "assis[ting]" Veillard "to accomplish the harm." Doc. 31, Count II.

The District Court need not separately address this alternative theory of liability under the Eighth Amendment. To the extent Wilson argues that Ingram was deliberately indifferent to Wilson's safety, this theory is part and parcel of Wilson's failure-to-protect claim. To the extent Wilson asserts that Ingram acted with an even more culpable

state of mind than subjective recklessness, the District Court need not address this issue at this stage of the case. Such a determination will not change the scope or course of proceedings on Wilson's Eighth-Amendment claim or request for punitive damages.

### 3.   *Interference with Medical Treatment Claim (Ingram)*

Ingram is entitled to summary judgment on Wilson's Eighth-Amendment medical-deliberate-indifference claim. Doc. 31, Count IV. Wilson has not created a triable fact issue on the elements of deliberate indifference and causation.

Concerning deliberate indifference, Wilson's evidence would not enable reasonable jurors to find that after Wilson's fight with Veillard on November 8, 2022, Ingram knew that Wilson had a serious medical need that required immediate medical attention (as opposed to sick-call care). *See* Doc. 74-17, Wilson Dep. 64:15-67:14; 68:19-20, 76:2-81:2. Relatedly, Wilson has not produced sufficient evidence that Ingram knew that *threatening* Wilson not to report his injuries—or interfering with Wilson being examined the day of the fight—posed a substantial risk of harm to Wilson's health.

As to causation, Wilson has not produced sufficient evidence to create a genuine factual dispute as to whether Ingram's alleged interference with an immediate examination—or the 2-day delay in Wilson receiving medical treatment through sick-call on November 10, 2022—exacerbated any of Wilson's injuries. *See* Doc. 78-7.

For the reasons set forth above, Ingram is entitled to summary judgment on Wilson's Eighth-Amendment Interference-with-Medical-Treatment claim.

## B.    <u>The Claims Against Jones</u>

### 1.    *Failure to Protect Claim*

Wilson has abandoned his Eighth-Amendment failure-to-protect claim against Jones. Doc. 79 at 29.

### 2.    *Retaliation Claim*

Jones is entitled to summary judgment on Wilson's First-Amendment retaliation claim. Wilson claims that Jones retaliated against Wilson for reporting the November 8, 2022 incident by putting Wilson in administrative confinement on November 13, 2022.

The summary-judgment evidence establishes that on November 13, 2022, Lieutenant Eric Gibson ordered that Wilson be placed in

administrative confinement ("AC"). Doc. 74-15; Doc. 74-16; Doc. 74-13, Jones Dep. 62:21-63:11. Gibson placed Wilson in AC because Jones found under Wilson's sheets of his assigned bed 2 grams of suspected tobacco. *Id.*; *see also* Doc. 74-13, Jones Depo. 54:17-20. Another officer witnessed Jones's search and his discovery of the contraband. Doc. 74-13, Jones Depo. 62:2-9, 65:6-66:14. Lieutenant Gibson placed Wilson in confinement "under investigation pending the testing of substance to determine if it contains any narcotics." Doc. 74-15;

On November 14, 2022, Colonel Brad Shouppe ordered that Wilson remain in administrative confinement "pending discipline." Doc. 74-15. Warden Holland concurred with Shouppe's decision. *Id.*

Wilson was aware that Lieutenant Gibson placed him in confinement because Jones found the alleged contraband secreted in Wilson's bed. Doc. 74-15 (Inmate Impounded Property List Wilson was provided but refused to sign). Wilson has provided no evidence to dispute the fact that the discovery of the alleged contraband was the reason he was placed in AC, nor has he provided evidence Gibson was the person who ordered Wilson's placement in AC, not Jones. Although Wilson questions why Jones searched Wilson's cell, Doc. 79 at 26, Wilson has not

produced sufficient evidence to genuinely dispute Jones's testimony that correctional officers routinely conduct searches to ferret out contraband, and that she has a very sensitive nose and spontaneously searches cells if she smells substances such as tobacco while patrolling a dormitory or passing by a cell. Doc. 74-13, Jones Dep. 60:5-61:1, 63:17-64:4.

The undersigned has not overlooked Wilson's deposition testimony that while Jones was escorting Wilson to a pre-confinement physical, Jones allegedly told Wilson he was going to confinement because he wrote grievances and a sick-call request. Doc. 74-17, Wilson Dep. 12:2-6. Jones's alleged statement, however, is insufficient to create a triable issue on whether Jones would have taken the same action in the absence of Wilson's grievance writing.

## C.   The Conspiracy Claim Against All Defendants

Wilson's conspiracy claims are barred by the intra-corporate conspiracy doctrine. *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir. 2010).

Wilson attempts to overcome the intra-corporate conspiracy doctrine by arguing that persons not employed with the FDC were involved in Defendants' conspiracy—namely Inmate Veillard and the

Centurion medical nurse who assessed Wilson after the fight. Doc. 79 at 35-37. Wilson's conclusory and speculative assertions in his opposing memorandum do not raise a genuine factual dispute as to whether a conspiracy reached beyond Ingram, Granger and Causey.

According to the evidence, Veillard was *completely surprised* when the officers showed up at his cell with Wilson on November 8, 2022, indicating that there was no prior agreement or understanding between Veillard and the Defendants to attack Wilson. Doc. 74-10, Veillard Dep. 33:6-34:2, 37:1-7, 51:3-52:4.

As to the nurse, Wilson's description of the medical assessment concedes that the nurse did not document any injuries is *because Wilson did not identify any*. Doc. 74-17, Wilson Dep. 66:3-68:20. The fact that the nurse allegedly stood "mute" after Ingram allegedly threatened Wilson not to report any injuries does not create a genuine factual dispute as to whether the nurse reached an understanding with Ingram to violate Wilson's rights. *See Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) (sworn statements that support or oppose a motion for summary judgment must be made on personal knowledge); *Bailey v. Bd. of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir. 1992) ("The

linchpin for conspiracy is agreement, which presupposes communication."); *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989) ("Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment.").

### D.   **Compensatory Damages**

Defendants argue that Wilson is barred from recovering compensatory damages because Wilson fails to demonstrate he suffered more than a *de minimis* physical injury. Doc. 74 at 18-25 (invoking 42 U.S.C. § 1997e(e)). Section 1997e(e) states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act."

Subsection 1997e(e) does not define "physical injury." The Eleventh Circuit has determined that a *de minimis* injury is not enough, but there is no bright-line rule establishing what constitutes a *de minimis* injury. *Thompson v. Smith*, 805 F. App'x 893, 900-01 (11th Cir. 2020) (citation omitted). Mere discomfort is *de minimis*, *Dixon v. Toole*, 225 F. App'x 797,

799 (11th Cir. 2007), as are minor scratches or cuts, *Pierre v. Padgett*, 808 F. App'x 838, 843-44 (11th Cir. 2020).

Here, Wilson's description of his injuries is sufficient to make a threshold showing of more than a *de minimis* physical injury. Wilson states that as a result of Ingram, Granger, and Causey's deliberate indifference, Veillard battered Wilson for 30 to 40 minutes. During that assault, Wilson fell, hit his head and momentarily lost consciousness. Doc. 74-17, Wilson Dep. 44:25-45:10, 77:7. In addition, Veillard bit flesh from Wilson's stomach which caused an open wound that bled. *Id.*, Wilson Dep. 49:24-50:3, 66:12-13, 77:9-10, 78:15-79:21; Doc. 74-10, Veillard Dep. 40:12-14. Wilson also sustained several abrasions and lacerations all over his body. *Id.*, Wilson Dep. 77:10-11, 80:3-22.

Pain, abrasions, lacerations and an open, bleeding wound from a human bite that removed flesh—sustained after a 40-minute fist-fight—does not constitute "a routine discomfort associated with confinement." *Thompson*, 805 F. App'x at 904 (cleaned up); *Id.* at 902-05 (assessing whether an injury is *de minimis* partly by reference to the standards governing whether a correctional officer's use of force against a prisoner violates the Eighth Amendment); *see also Fleming v. United*

*States*, No. 4:20-cv-00545-RH-MJF, Doc. 269 (Order Den. Mot. for Partial Summ. J.) (N.D. Fla. Feb. 27, 2025) (prisoner's sworn statement that she suffered scratches, back pain, neck pain, headaches, and permanent scarring after forceful assault by another inmate were sufficient to withstand summary-judgment motion invoking § 1997e(e)).

Viewed in the light most favorable to Wilson, his asserted injuries are sufficient to withstand summary judgment on Defendants' § 1997e(e) argument.

### E.   <u>Punitive Damages</u>

Defendants argue that Wilson is barred by 18 U.S.C. § 3626(a)(1)(A) from recovering punitive damages. Doc. 74 at 25-33. Section 3626 states:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A). Punitive damages are included within the definition of "prospective relief" used in the statute. *See Johnson v. Breeden*, 280 F.3d 1308, 1325 (11th Cir. 2002), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015).

Defendants maintain that punitive damages categorically cannot satisfy the requirements of § 3626(a)(1)(A) because: (1) "'correction' of [a] violation [of a federal right] is accomplished through compensatory damages and punitive damages are, by their nature, never corrective"; and (2) punitive damages cannot be "narrowly drawn," "extend no further than necessary," or be "the least intrusive means," to correct the violation of a federal right. Doc. 74 at 26-33. However, Defendants cite no binding precedent which holds that § 3626 prohibits courts from awarding punitive damages in prison-conditions cases. The Eleventh Circuit case Defendants cite, *Johnson*, indicates that punitive damages are permitted in prison-conditions cases. *See Johnson*, 280 F.3d at 1325 (finding section 3626's "requirements mean that a punitive damages award must be no larger than reasonably necessary to deter the kind of violations of the federal right that occurred in the case" and "that such awards should be

imposed against no more defendants than necessary to serve that deterrent function and that they are the least intrusive way of doing so").

Thus, section 3626 does not imposes a categorical prohibition on an award of punitive damages. *See Benton v. Rousseau*, 940 F. Supp. 2d 1370, 1379-80 (M.D. Fla. 2013) (prisoner was entitled to $15,000 in punitive damages for violations of his First and Fourteenth Amendment rights); *see also, e.g., Flores v. Pugh*, Case No. 3:24-cv-68-TKW-HTC, ECF No. 27 at 10-11 (N.D. Fla. July 12, 2024), *report and recommendation adopted*, ECF No. 35 (N.D. Fla. Aug. 12, 2024); *Santiago v. Walden*, 2024 WL 2895319, at *8 (M.D. Fla. June 10, 2024); *Blake v. Ortega*, 2024 WL 2000107, at *4 (N.D. Fla. Mar. 18, 2024), *report and recommendation adopted*, 2024 WL 1996014 (N.D. Fla. May 6, 2024). For this reason, the District Court should deny Defendants' motion for summary judgment on the issue of punitive damages.

## IV.  CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the District Court:

1.  **GRANT** Defendants' motion for summary judgment, Doc. 74, on the following claims:

      a.      Plaintiff's First-Amendment retaliation claim against Defendant Jones;

      b.      Plaintiff's Eighth-Amendment interference-with-medical-treatment claim against Defendant Ingram (Count IV); and

      c.      Plaintiff's conspiracy claim against all Defendants (Count V).

2.    **DENY** Defendant's motion for summary judgment, Doc. 74, in all other respects.

3.    **DEEM ABANDONED** Plaintiff's Eighth-Amendment claim against Defendant Jones.

4.    **TERMINATE** Defendant Jones as a party in CM/ECF, as no claims remain against Jones.

5.    **DENY AS MOOT** Defendants' Motion to Strike and Exclude Evidence, Doc. 86, because the District Court need not consider Plaintiff's affidavit concerning his injuries, Doc. 78-10, in ruling on Defendants' summary-judgment motion.

At Panama City, Florida, this <u>25th</u> day of March, 2025.

<u>/s/ *Michael J. Frank*</u>
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**The District Court referred this case to the undersigned to make recommendations regarding dispositive matters. *See* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only.</u> A party must serve a copy of any objections on all other parties. A party who fails to object to this report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**