# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

BERNARD D. WILSON,

      Plaintiff,

vs.

      Case No. 5:23-cv-00253-TKW-MJF

INGRAM, et al.,

      Defendants.

## NOTICE OF FILING PRETRIAL MATERIALS

NOTICE IS HEREBY GIVEN that the Plaintiff will bring the following witnesses and evidence at trial in this matter:

Exhibit A: Statement of Facts

Exhibit B: Plaintiff's Exhibit List

Exhibit C: Plaintiff's Witness List

Respectfully Submitted,    */s/ Joshua Tarjan*

    Joshua Tarjan (FBN 107092)
    THE TARJAN LAW FIRM P.A.
    12372 SW 82 Avenue
    Pinecrest, FL 33156
    (305) 423-8747; (323) 243-3186 (cell)
    josh@tarjanlawfirm.com

    */s/ James V. Cook*
    JAMES V. COOK (FBN 0966843)
    Law Office of James Cook
    314 West Jefferson Street
    Tallahassee, FL 32301
    (850) 222-8080; 561-0836 fax
    cookjv@gmail.com

    *Attorneys for Plaintiff*

1

**Exhibit A: Plaintiff's Statement of Facts**

Bernard Wilson, a state prisoner, alleges the Defendants—Ingram, Granger and Causey, Florida State correctional officers—on November 8, 2022 while he was in confinement at Jackson Correctional Institution ("C.I."), retaliated against him for filing grievances by placing him in a cell with an inmate from whom he was supposed to be kept separate; told him they were putting him in the cell for snitching; stood by and watched as the other inmate attacked Mr. Wilson, as they expected, and the two fought; and taunted Mr. Wilson during the fight—all for no penological reason, resulting in multiple injuries.

Mr. Wilson was known to actively petition and write grievances for his rights. In 2018 he filed a lawsuit against officers at Liberty C.I., which settled in 2020. In January 2022, at Calhoun C.I., he submitted a grievance claiming that a Sgt. Shuler threatened that if Wilson filed a lawsuit against anybody at Calhoun, Shuler and his "brothers" would guarantee that Wilson would not live to collect.

Wilson was subsequently transferred to Jackson C.I.'s Administrative Management Unit (A.M.U.) on August 10, 2022. Between his arrival at Jackson and the date of the incident that is the subject of this lawsuit (November 8, 2022) he filed additional grievances.

In August 2022 he filed an informal grievance for wrongful placement in A.M.U., based on frivolous allegations, and mentioned the facility's reputation for

retaliating against inmates who file grievances. That month he also filed an informal grievance for interference with legal mail, and in October, after placement in confinement, he filed a grievance protesting suspension of canteen privileges.

On October 31, 2022 inmate Webens Veillard was placed in Wilson's cell, H1219. The two did not get along.

On November 4, Veillard was removed from the cell, H1219, and he informed staff that Wilson sexually assaulted him. An investigation was opened under the Prison Rape Elimination Act ("PREA"). Wilson was removed from the cell and taken to the medical facility for a PREA assessment. Wilson denied Veillard's allegations, and the Office of the Inspector General ultimately found them unfounded. Wilson and Veillard do agree—as per their depositions—that on November 4, before Veillard was removed from the cell, the two fought extensively. Veillard claimed he almost lost his life.

After the PREA assessment, Wilson was returned to cell H1219 where he remained until November 8. Veillard was moved to a separate cell, and the two were kept apart.

On November 8, between 12:30 p.m. and 2:00 pm, Wilson was told to cuff up and was removed from his cell. Defendant Causey escorted Wilson to the shower and made a derogatory statement to Wilson. Wilson did not know why he was being taken to the shower, and originally thought he was being removed from

confinement.

Within an hour of being placed in the shower, Defendants Ingram and Granger came for Wilson. He was cuffed behind his back, and Granger and Ingram escorted him to Wing 2. During the escort, Granger stated to Wilson out of the blue, "Well, you like to write grievances and we'll show you how we deal with snitches."

Wilson was escorted to cell H2201. Once they arrived at the cell door, Wilson observed Veillard, his nemesis, inside, and explained to Granger, Ingram and Causey that he could not go in the cell with Veillard due to a PREA investigation. Wilson also said he was afraid Veillard would physically assault him, that their status was "keep separate," and that Veillard would kill him if he went in.

Granger, Causey and Ingram told Wilson it was his turn to be molested, to "take it like a man," to "stop being a coward," this is what happens to snitches, you like to write grievances, and derogatory statements of that nature.

Wilson thought Veillard was asleep, but the officers woke Veillard up. When Veillard saw Wilson, he yelled, "What the hell is going on!" and told the officers that Wilson was the one he alleged PREA on, who sexually assaulted him, and that if Wilson came in the cell, what he would do. Veillard asked them not to place Wilson in there, but the officers ignored him.

As the officers were forcing Wilson to enter the cell, Causey made statements along the lines of: it was Wilson's turn "to be fucked," "screwed" or "molested." The Defendants forced Wilson into the cell, making comments such as: "Get your bitch," "get his ass in there" and "fuckin' fight."

Defendant Ingram has testified as to the strict protocol for moving an inmate into a cell where there is another inmate: Before the cell door is opened, the inmate inside first puts his hands through the cell door flap, is handcuffed, then moves to the back of the cell, and remains there until the other inmate is placed inside the cell. Once the door is shut, each inmate gets uncuffed, through the flap. During this process, both inmates are cuffed behind their back, with no exceptions to this protocol.

However, on November 8, Ingram, Granger and Causey completely disregarded this mandatory protocol and—according to both Wilson and Veillard—did not cuff Veillard. When the Defendants pushed Wilson—cuffed behind his back—into the cell, Veillard (uncuffed) hit Wilson in the head, causing Wilson to fall and hit his back on the hard edge of the steel bunk.

Once Wilson was inside the cell, Veillard attacked Wilson while Wilson was still in handcuffs. Just as Wilson was scared of Veillard, Veillard was scared of Wilson. The two already "had a problem" with each other, and Veillard said he was afraid Wilson might have a weapon. Veillard testified he was scared and had

never seen anything like what the officers did that day in his life.

After the Defendants shut the cell door and opened the cuffing portal, Wilson placed his hands through the portal, to be uncuffed. Veillard attacked Wilson, kicking and punching him, as they were removing Wilson's cuffs.

Veillard attacked Wilson on top of the head, and on his shoulders and back. It took 20 or 30 seconds to remove the cuffs. As he was uncuffed, Wilson used the first hand that became free to protect himself and protect his face. Seconds later the Defendants removed the other handcuff. The officers then pulled the handcuffs through and shut the portal.

At this point both of Wilson's hands were free. Veillard was already attacking him, and Wilson fell, and blacked out. When he came to, Veillard was still yelling and screaming, "I'm going to kill you, I'm going to kill you. Y'all better come get him." As Wilson tried to get up, Veillard attacked him again, and the two proceeded to fight. Wilson described it as "an attack rolled over into a fistfight." The two would fight, then pause, then fight again, like a boxing match with rounds. This went on for approximately 40 minutes.

The Defendants were present during different stages of the incident. When Wilson was placed inside the cell, Granger and Ingram were standing at the cell. Causey went back and forth throughout the wing, which is not big, and would pass by the cell, look in, comment on the assault, and walk off. During the fight the

Defendant officers approached the cell several times and taunted Wilson, encouraging Veillard to continue assaulting him.

According to FDC procedures, Wilson should never have been placed in the cell on November 8. Ingram testified that when moving an inmate to a new cell, if one inmate says he has a PREA allegation against him (by the other), the officers should stop the move, place the incoming inmate in a holding cell, and then investigate. Here, both Wilson and Veillard told the Defendants there was a PREA allegation between them, but the movement was not halted, and Wilson was instead shoved into the cell.

The Defendants continually ignored Wilson and Veillard's cries for help. Veillard was yelling "Get him out of here," and Wilson pled to be removed, repeatedly saying, "Get me out of here." But the officers merely stood at the cell door, looked through the window, smirked, laughed and encouraged the fight.

All of the officers had radios, which they are supposed to have any time they're on the floor. But none of them called backup during the fight. None of them intervened to stop the fight.

The cell was bloody, a fact the Defendants could not miss. During the fight, when the officers came to the door, there was some negotiation, at which time both inmates were covered in blood and asking to be removed. Wilson and Veillard showed the officers blood, saying words to the effect of "Please get me out here.

7

He's going to kill me." There was blood everywhere and the officers could not help seeing what was occurring. Wilson was bleeding from a bite wound on his stomach. Veillard testified he did bite Wilson. Blood covered Wilson's pillow and Veillard's boxers. Veillard was bleeding "everywhere."

When the officers left and Veillard saw they would not remove Wilson, he continued to attack. Officers repeatedly came to the cell and left for a long time. Despite the pleas to be removed, the officers would walk away and the fighting would begin again.

After about 40 minutes, Lieutenant Oliver came to the cell. Wilson and Veillard tried to get Oliver to intervene to stop the fight since neither trusted his adversary. Wilson begged Oliver to remove him, showing him the blood and injuries—to which Oliver stated "You gotta deal with it!" Oliver encouraged Veillard to assault Wilson. When Oliver walked away, Veillard renewed his attack.

Oliver finally returned, 10 to 30 minutes later, and informed Wilson he wasn't supposed to be in that cell, and Causey moved Wilson back to Wing 1, cell H1208. Plaintiff was grateful that Oliver finally brought an end to the violence although he believed Oliver was not blameless himself.

Approximately an hour later, Causey took Wilson to the H dorm medical room and dropped him off. En route, Causey antagonistically stated to Wilson, "You got what you're looking for, huh?"

When Wilson arrived at the medical room, Ingram, Oliver and a nurse (Everett) were present. The nurse asked Wilson if he had any injuries he wanted to report. Wilson answered yes, she asked him where, and he began to show her his wounds, including the bite wound.

As Wilson began to report his injuries, Sgt. Ingram said: "Wait, wait, hold up. Before you report those injuries, before you document those injuries, I want to let you know what's going to happen. If you say something about them injuries, you're going to be in confinement longer, I'm going to hook you up, write some more DRs, and I'm going to gas your ass."   Ingram said, "Shut the fuck up. Don't mention nothing. We're just making it look good for the camera."

Oliver attempted to encourage Wilson to report his injuries, but Ingram stated words to the effect: No, no, this is how it's going to go. Ingram basically took over and Oliver remained mute, despite the fact that Oliver was his superior. Wilson could tell Ingram was running the show.

In Wilson's deposition, opposing counsel pressed Mr. Wilson on why a lieutenant, such as Lt. Oliver, would be cowed by a lower ranking officer, such as Sgt. Ingram. Wilson testified that how many years one had at DOC or who one knew there dictated one's unofficial rank. He testified that Ingram had previously told him that he had more rank than any "white shirt" at Jackson C.I. (i.e., lieutenant or captain), and that "if I tell you that a duck could pull a truck, you

9

better hook that motherfucker up." In other words, whatever Ingram says, goes.

Wilson could tell that the nurse was frustrated and wanted him to tell everything. But from his experience, Wilson knew to take such threats seriously. Also Wilson was scheduled to leave confinement (Dorm H) the next day and was afraid he might find his stay there extended, based on Ingram's threats. So Wilson did not recount his injuries to the nurse, and the medical records from that encounter inaccurately report no injuries.

After the medical encounter, Wilson was taken to H1208, and was released from H Dorm to general population the next day, November 9.

DOC employees are expected to scrupulously document where they place inmates. However, Internal Movements forms show that Wilson was moved to cell H1219 on October 1, and then to H1208 on Nov. 8. But no documentation shows that Wilson was ever placed in cell H2201, where the fight took place. Paperwork shows Veillard was residing in H2201 on Nov. 8. But Wilson was never officially assigned to H2201.

This absence of documentation for Wilson in that cell suggests that Ingram, Causey and Granger moved Wilson to the November 8 fight cell (H2201, Veillard's cell) unofficially, upon their own initiative, for—as they told Wilson—retribution.

Mr. Wilson suffered injuries:

- Veillard hit Mr. Wilson in the head, causing Mr. Wilson to fall and hit his back on the hard edge of the steel bunk.

- During the fight Mr. Wilson also hit the back of his skull on concrete.

- Wilson suffered multiple abrasions.

- Wilson's right eyebrow was split and bleeding.

- The cuts inside of Wilson's lip took two to three weeks to heal.

- Veillard bit Mr. Wilson and removed a layer of skin. This wound was extremely bloody, resulted in blood all over the cell, and took over a month to heal.

- After the attack, Mr. Wilson had headaches for about a month.

- He also suffered dizziness which lasted about 10 days. If he sat up too fast he had to hold onto something and wait to clear his head.

- He felt nauseated and queasy for about 4-5 days, which he attributes to hitting the back of his skull on concrete.

- His vision was blurred about 10 days.

- From hitting his head, he had a painful, swollen lump the size of half a ping pong ball, which took a month to disappear and prevented him from sleeping on the back of his head.

- Mr. Wilson has symptoms to this day.

- From hitting his back on the metal bed, Mr. Wilson continues to feel a

11

sharp shooting pain in his left leg when he steps on his left foot, and it's difficult for him to get up if he sits too long.

- The bite wound is still visible two years later.

Medical records show Wilson's repeated attempts to seek medical treatment.

Wilson submitted an inmate sick-call request on Nov. 10, 2022 stating "I have wounds from previously being assaulted/attacked that are causing me pain," and listed the start date as Nov. 8, 2022, the date of the incident that is the subject of this lawsuit.

A medical report signed by an LPN six days later, on 11/16/22, describes Mr. Wilson's pain as "Aching" and "Lumbar region: Center-Over spinal column." The report indicates Mr. Wilson found a position of comfort by lying on his back. He was prescribed acetaminophen and bacitracin—a topical antibiotic ointment for treating skin infections from cuts, scrapes and burns, which would be consistent with his having wounds from the incident.

Medical Test Forms signed by an RN and an LPN within two months of the incident—on 12/11/22, 12/14/22 and 1/3/23—show Mr. Wilson repeatedly seeking sick calls related to "back pain and headaches."

Mr. Wilson's back pain was severe enough that an x-ray was prescribed:

A "Test Form" electronically signed by Samuel Defigarelli, MD on 1/5/23 indicates an "XRAY LUMBAR SPINE APandLAT" (sic) with diagnoses

12

"MUSCULOSKELETAL PAIN (ICD-M79.10). A medical record electronically signed by Prakash N. Patel, MD on Jan. 6, 2023 shows that Mr. Wilson had the Lumbar spine AP and LAT X-ray on Jan. 6.

Mr. Wilson also required a low bunk pass due to his injuries. (A "Test Form" electronically signed by Samuel Defigarelli, MD on 1/5/23 indicates that a "Low Bunk Pass" was issued.)

On June 4, 2023, Mr. Wilson was stabbed by gang members and life-flighted to a hospital. On August 4, 2023, he was returned to the same prison unit where he had been stabbed, and where Veillard was housed. The next day, August 5, Veillard and another inmate attacked Wilson.

On September 29, 2023, Mr. Wilson had yet another series of Lumbar Spine AP and LAT X-rays, which were compared to the 1/6/23 X-rays.

A medical Test Form signed by Tracy Garnes, RN on Jan. 29, 2024 shows that on 1/29/24 Mr. Wilson was still complaining of back pain.

While Mr. Wilson received additional injuries in 2023, he ascribes the injuries listed in the bullet points above to the actions of Defendants.

Although Ingram was granted summary judgment on Wilson's claim against Ingram for medical interference, Ingram's actions did worsen Wilson's injuries by delaying medical relief. Wilson was prescribed acetaminophen, a pain reliever, and bacitracin, an antibiotic, not until November 16, eight days after the incident.

## Exhibit B: Plaintiff's Exhibit List

1. Grievances showing basis of animus for retaliation. (as impeachment evidence to preclude charge of recent invention).

2. Classification Files Wilson and Veillard;

3. Personnel Records: All Defendants;

4. Floor Plans Dorm H;

5. Inmate Compatibility Screen (IM70);

6. Incident Reports: 11/4/22 incident; 11/13/22 incident;

7. MINS Reports relating to matter sued upon;

8. Control Room Logs, 11/4/22;

9. Daily Security Rosters showing dates and times of officers presence and role.

10. Wilson Daily Records of Special Housing – Supplement, 10/11/22-11/9/22. Shows the housing location of the respective parties.

11. Veillard Daily Records of Special Housing – Supplement (showing inter alia that Veillard "will be placed under Special Review against Wilson).

12. Cell Inspection reports for Webens Veillard. Document showing movements of the parties during the time frame of the matter sued upon.

13. Internal Movement Logs of the respective parties (ECF 74-2 and 3). Show the placement decisions that repeatedly brought the respective parties together.

14. FDC Investigative Report, including PREA Checklist. Shows the investigation of Veillard's PREA allegations, the existence of animus of Veillard against Wilson, and the eventual finding of "Unfounded." (ECF 74-8 and 9). (may be partially for impeachment).

15. Dorm H Logs showing events in H Dorm during the relevant periods.

16. Florida Administrative Code Sections. (see ECF 79 at 30 n.10)

17. Officer Photographs for witness identification;

18. Protective Management Records (Wilson)

19. PREA Records;

20. Veillard Disciplinary History;

21. Wilson inmate sick-call request, 11/10/22 ;

22. Medical Records (showing reported injuries for both Wilson and Veillard) (ECF 74-5 at 14; 74-7 at 3), including:

    a. Medical report signed by LPN, 11/16/22, describing Wilson's pain as "Aching" and "Lumbar region: Center-Over spinal column."

    b. Medical Test Forms 12/11/22, 12/14/22 and 1/3/23—showing Wilson repeatedly seeking sick calls related to "back pain and headaches."

    c. Medical Test Form by Samuel Defigarelli, MD on 1/5/23 indicating "XRAY LUMBAR SPINE APandLAT" (sic) with diagnoses "MUSCULOSKELETAL PAIN (ICD-M79.10).

    d. Medical record by Prakash N. Patel, MD on Jan. 6, 2023 (showing that Mr. Wilson had the Lumbar spine AP and LAT X-ray on Jan. 6)

    e. Medical Test Form, Samuel Defigarelli, MD, 1/5/23, re. Low Bunk Pass

    f. Medical report regarding September 29, 2023, Lumbar Spine AP and LAT X-rays

    g. Medical Test Form by Tracy Garnes, RN on Jan. 29, 2024 showing Wilson still complaining of back pain.

**Exhibit C: Plaintiff's Witness List**

1. Causey, Joshua, care of attorney. Testimony and time uncertain.

2. Daniels, Aaron (inmate), DC# 132049, Santa Rosa Correctional Institution, 5850 East Milton Road Milton, FL 32583-7914, 850-983-5800. Can testify to prison staff animus against Plaintiff. 30 minutes.

3. Everett, Kilee Rose, RN, N.W. Fla. Community Hospital, 1360 Brickyard Road, Chipley, FL 32428. Can testify to medical issues. 30 minutes

4. Granger, Jonathan, care of attorney Testimony and time uncertain.

5. Hancock, Glenn, AWP, Jackson Correctional Institution, 5563 10th Street Malone, FL 32445-3144. Can testify to administrative issues. 1 hour.

6. Ingram, Benny, care of attorney Testimony and time uncertain.

7. King, Lt. Kyle, Jackson Correctional Institution, 5563 10th Street Malone, FL 32445-3144. Can testify to administrative issues. 30 minutes.

8. Lewis, Billy K., DC# 375027, Apalachee C.I. East Unit, 35 Apalachee Drive, Sneads, FL 32460, 850-718-0688. Can testify to animus against Plaintiff. 30 minutes.

9. Mount, Jennifer, Jackson Correctional Institution, 5563 10th Street Malone, FL 32445-3144. Can testify to animus. 30 minutes.

10. Oliver, Lt. Lucious, Jackson Correctional Institution, 5563 10th Street Malone, FL 32445-3144. Can testify to actual event. 1 hour.

11. Thomas, Freddie L., DC# 766368, Jackson Correctional Institution, 5563 10th Street Malone, FL 32445-3144. Can testify to animus. 30 minutes.

12. Veillard, Webens, DC# C90725, Jackson Correctional Institution, 5563 10th Street Malone, FL 32445-3144. Can testify to animus. 2 hours.

13. Wilson, Bernard, care of attorneys. Can testify to animus and the event. 2 hours.

14. Any witnesses listed by Defendants. Testimony and time uncertain.

Respectfully Submitted,   */s/ Joshua Tarjan*
Joshua Tarjan (FBN 107092)
THE TARJAN LAW FIRM P.A.
12372 SW 82 Avenue
Pinecrest, FL 33156
(305) 423-8747; (323) 243-3186 (cell)
(786) 842-4430 (fax)
josh@tarjanlawfirm.com

*/s/ James V. Cook*
JAMES V. COOK (FBN 0966843)
Law Office of James Cook
314 West Jefferson Street
Tallahassee, FL 32301
(850) 222-8080; 561-0836 fax
cookjv@gmail.com

*Attorneys for Plaintiff*

I CERTIFY the foregoing was filed electronically on 5/9/2025, serving counsel of record registered to be notified by the CM/ECF electronic filing system.

*/s/James Cook*